**Linda SAGENDORF–TEAL, Plaintiff–Appellee–Cross–Appellant,**

v.

**COUNTY OF RENSSELAER; W. Warren McGreevey, individually and as Rensselaer County Sheriff; and Charles Walker, Captain, Defendants–Cross–Appellees,**

**Edward Phillips, Undersheriff, Defendant–Appellant–Cross–Appellee.**

**Nos. 185, 602, Dockets 96–7002(L), 96–7014(XAP).**

United States Court of Appeals, Second Circuit.

Argued Sept. 9, 1996.

Decided Nov. 12, 1996.

Blair W. Todt, Carter, Conboy, Case, Blackmore, Napierski & Maloney, Albany, NY, for defendant-appellant-cross-appellee.

Mark T. Walsh, Gleason, Dunn, Walsh & O'Shea, Albany, NY, for plaintiff-appellee-cross-appellant.

Thomas R. Cioffi, Deputy County Atty., Troy, NY, submitted a brief, for defendant-cross-appellee County of Rensselaer.

Before: NEWMAN, Chief Judge, CARDAMONE and CALABRESI, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The principal issue on this appeal is whether an employer, attempting to establish a dual motivation 'defense to a charge of termi-

nation of employment because of protected speech, must prove that the adverse action taken for an improper reason would have been taken for a proper reason on the same day that the employer acted. Edward Phillips appeals from the November 22, 1995, order of the United States District Court for the Northern District of New York (David Hurd, Magistrate Judge), denying a post-trial motion to set aside the Court's September 25, 1995, judgment. The judgment, entered after a jury verdict, awarded compensatory damages to Linda Sagendorf–Teal on her claim under 42 U.S.C. § 1983 (1994). Phillips contends that the jury should have been charged that it could accept his affirmative defense by finding that the plaintiff would have been terminated for permissible reasons, even if the jury also found that the permissible termination might not necessarily have occurred on the same day as the dismissal. He also claims that the District Court should not have given a missing witness charge because (1) the witnesses were equally available to be called by the plaintiff and (2) he was not given advance notice of the Court's intention to give the jury charge. He further argues that he was entitled to qualified immunity, or in the alternative, to a remittitur of damages to exclude any damages covering the period after the end of the employee's probation.

Sagendorf-Teal cross-appeals from the judgment on the grounds that her action should not have been dismissed against the County of Rensselaer, her employer, nor against individual employees of the County; that her wrongful dismissal claim under New York Civil Service Law § 75–b (McKinney Supp.1996) should not have been dismissed; and that it was error for the District Court to deny her claim for front-pay.

We affirm on both the appeal and the cross-appeal.

## Background

On February 7, 1989, Sagendorf–Teal was fired from her position as a corrections officer with the Rensselaer County Sheriff's Department. Sagendorf–Teal alleged, and the jury found, that she was fired in retaliation for filing a written report of an incident in which certain of her co-workers were accused of using excessive force against one of the jail inmates. Sagendorf–Teal's complaint named as defendants the County of Rensselaer, Undersheriff Edward Phillips, and other employees who were subsequently dropped by stipulation or dismissed at the close of the evidence.

On January 27, 1989, one of the jail inmates became unruly and had to be subdued by the staff. That inmate, Paul Palmer, was injured during the incident (the "Palmer incident"), and filed a civil rights complaint, which was later dismissed. Sagendorf–Teal was not officially on duty at the time of the incident, but she witnessed it, and pursuant to usual procedure, submitted a written report (the "Palmer report") describing her version of what happened. Unlike every other officer's report on the Palmer incident, Sagendorf–Teal's report indicated that excessive force had been used to subdue the inmate. As a result of an investigation conducted by the Highway Division of the Sheriff's Department, some officers were disciplined for technical rules violations in connection with the Palmer incident.

Soon after Sagendorf–Teal submitted her report, she began to hear rumors that she was regarded as a traitor by her fellow corrections officers. Almost immediately, Phillips and others embarked on a calculated plan to obtain information that could be used to jeopardize Sagendorf–Teal's employment. Toward that end, Phillips obtained statements from five officers—four of whom had been involved in the Palmer incident—describing rules infractions committed by Sagendorf–Teal either prior to the Palmer incident or shortly thereafter. The rules infractions included associating with an ex-inmate while off-duty, undermining the authority of a fellow officer, and having a personal relationship with an inmate (not involved in the Palmer incident).

Prior to beginning work as a corrections officer in October 1988, Sagendorf–Teal was engaged to a man who, after their relationship ended and after Sagendorf–Teal had begun to work as a corrections officer, be-

came an inmate at the Rensselaer County jail.[1]

On February 7, 1989, a few days after the Palmer incident, Sagendorf–Teal was called to a meeting with Undersheriff Phillips and other officers. Phillips first confronted Sagendorf–Teal regarding the five rules infractions. He then demanded that she agree to cease her relationship with her former fiancé. When Sagendorf–Teal answered that she had no comment, she was fired on the spot. Her complaint alleged that the real reason for her termination was the Palmer report.

Prior to trial, the action was partially dismissed as to the County on the ground that a provision in New York's Constitution effective at the time Sagendorf–Teal was fired rendered every county immune from the acts of its sheriff. The Court also dismissed the action as to two of the defendants, McGreevey and Walker, despite the fact that it had earlier denied their motion for summary judgment.

At trial, Phillips contended, through his cross-examination, that Sagendorf–Teal was fired for the various rules infractions, including the relationship she was having with one of the inmates and her refusal to state that she would discontinue that relationship. At the close of the plaintiff's case, Phillips and the defendant then remaining in the case rested without offering any evidence.

The jury returned a verdict in favor of the plaintiff in the sum of $76,889.44 for back-pay and interest through the date of the verdict. The Court then dismissed the state law claims on the grounds that the damages award under the federal claim precluded an award of damages under the state claim. Responding to various post-trial motions, the Court also denied the plaintiff's request for front-pay and denied Phillips's motion for judgment as a matter of law on the basis of qualified immunity, for a new trial, or for a diminution in damages. *Sagendorf–Teal v. County of Rensselaer,* 904 F.Supp. 95 (1995).

Phillips appeals, and Sagendorf–Teal cross-appeals.

---

1. The extent of Sagendorf–Teal's relationship with the inmate up to the time of her discharge is unclear. Some papers indicate that she was engaged to the inmate even at the time he was

## Discussion

### I. Phillips' Appeal

#### A. Affirmative Defense

During deliberations, the jury asked for clarification of the law governing Phillips' affirmative defense of dual motivation. The verdict form had read:

> Do you find that the defendant Edward J. Phillips has shown by a preponderance of the evidence that he would have made the same decision without considering the plaintiff Linda Sagendorf–Teal's protected speech?

The jury asked the Court to specify whether the statement "he would have made the same decision" meant "he would have made the same decision *on the same day,*" or if it was enough to find that he would have made the same decision at some later time.

The Court answered that the affirmative defense required the defendant to prove that in the absence of the protected speech, Phillips nonetheless would have made the decision to terminate Teal on the very same day. The Court added that a finding that Phillips would have terminated Sagendorf–Teal on a later day would affect only the measure of damages.

■ In an action under 42 U.S.C. § 1983, once a plaintiff has sustained its burden of proving that protected speech was a substantial or motivating factor in an adverse employment decision, the employer has the opportunity to prove, as an affirmative defense, that it would have taken the same adverse action for legitimate reasons, even if the improper motive had not existed. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Jund v. Town of Hempstead,* 941 F.2d 1271, 1289 (2d. Cir.1991); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (dual motivation defense in employment discrimination context).

first incarcerated at the jail. Other papers suggest that there was no ongoing relationship at the time of the relevant facts. Sagendorf–Teal subsequently married the inmate.

The dispute in this case concerns the time when the employer would have taken the adverse action, had the improper motive not existed. The District Court instructed the jury that the dual motivation defense would be established if adverse action would have been taken, for reasons other than protected speech, on the same day that the action was in fact taken. Phillips contends that he should have been required to prove only that he would have taken the same action, for reasons other than protected speech, but not necessarily on the same day. The District Court was correct.

■■■ If an employee is discharged because of protected speech, a First Amendment violation has occurred, and the violation is not eliminated by the fact that some other circumstance later occurs or later comes to the employer's attention that would have motivated the discharge if the prior firing for protected speech had not occurred. The later circumstance might provide a basis for denying the remedy of reinstatement, *see McKennon v. Nashville Banner Publishing Co.,* — U.S. —, —, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995), and will normally end the employer's liability for back pay, *id.* Even if the circumstance was known to the employer prior to the discharge for protected speech, the affirmative defense is not established unless the employer persuades the trier of fact that the adverse action would have been taken on the day the action occurred; if the prior (legitimate) circumstance would not have motivated a discharge on that day, but only at some later time, the discharge for protected speech is nonetheless actionable.

The Supreme Court has not had occasion to rule as to the timing aspect of a dual motivation defense in any case in which time mattered. In enunciating the dual motivation defense, the Court has required the employer to prove that it would have made the "same" decision based on legitimate reasons, *Price Waterhouse,* 490 U.S. at 251, 109 S.Ct. at 1791; *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576, and a decision might arguably be considered the "same" though made at two different times. However, the plurality opinion in *Price Waterhouse* unequivocally

states, "An employer may not, in other words, prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision if that reason did not motivate it *at the time of the decision.*" *Price Waterhouse,* 490 U.S. at 252, 109 S.Ct. at 1791 (opinion of Brennan, J., with whom Marshall, Blackmun, and Stevens, JJ., join) (emphasis added). This statement was approvingly quoted in Justice Kennedy's unanimous opinion in *McKennon,* — U.S. at —, 115 S.Ct. at 885.

We therefore conclude that the District Court's "same day" instruction to the jury was entirely correct.

B. Missing Witness Charge

■■ The "missing witness" charge allowed the jury to draw an adverse inference from the fact that the defendants had not called to the stand five present or former corrections officers. Those officers had provided Phillips with all of the information regarding Sagendorf–Teal's various rules infractions. Four of the five officers had also been directly involved in the Palmer incident. Defense counsel's only objection to the missing witness charge was overruled by the Court on the grounds that the witnesses were not equally available to both parties.

■■■ A trial court may use its discretion to give a missing witness charge when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction" yet the party fails to call those witnesses. *United States v. Torres,* 845 F.2d 1165, 1169 (2d Cir.1988) (citations and internal quotation marks omitted). The charge allows the jury to draw an adverse inference that the testimony of the witnesses would have been unfavorable to that party. *Id.* Where, however, the missing witness is as likely to favor one party as the other, then the judge must give the charge, if at all, against both parties. *Felice v. Long Island Railroad Co.,* 426 F.2d 192, 195 (2d Cir.1970). Whether a witness is equally available depends not solely on physical availability or accessibility, but on all the facts and circumstances bearing on the relationship of the witness to the parties. *Torres,* 845 F.2d at 1170.

In this case, the District Court ruled that the witnesses were not equally available to both parties. The facts support that determination. Four of the witnesses were involved in the Palmer incident, and their reports of the incident differed significantly from that submitted by the plaintiff. Each of the five missing witnesses had provided Undersheriff Phillips with some of the information regarding Sagendorf–Teal's alleged rules infractions. Clearly, these witnesses were not equally available to Sagendorf–Teal. This case presents the very circumstances of personal hostility to a fellow employee that were lacking in *Felice*, 426 F.2d at 195 n. 1 ("[W]e see no factual basis in this day and age for thinking that, in the absence of evidence of personal hostility, a subordinate employee would be more favorable to a corporate employer than to a fellow worker."). The missing witness charge was permissibly given.

■■■ We do not consider the defendant's contention that he would not have rested without calling any witnesses had he known that the trial court intended to give a missing witness charge. There was no objection to the charge on this ground. *See* Fed.R.Civ.P. 51. In any event, a court is required to give notice only of its proposed action upon requests for jury instructions, *id.*, and need not otherwise give counsel notice of the charge.

## C. Qualified Immunity

■■■ Phillips contends that he was entitled to qualified immunity. A government official is protected by qualified immunity insofar as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *E.g., Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir.1993). The standard is one of objective reasonableness. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The defendant is presumed to be aware of "basic, unquestioned constitutional rights," *id.* at 815, 102 S.Ct. at 2737, a presumption that may be rebutted if the defendant proves that he neither knew nor should have known that his conduct would violate those rights, *id.* at 819, 102 S.Ct. at 2738–39. The right to be free of

adverse employment action by a public employer for the exercise of First Amendment rights was firmly established prior to the discharge in this case. *See Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. at 574–75; *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993). The defendant's qualified immunity defense was properly rejected.

## D. Back-Pay

■■■ Phillips contends that the plaintiff's damages should be reduced to cover only her probationary employment period, rather than the longer period through the date of the verdict. We disagree. Although a probationary employee may usually be discharged with or without cause, she may not be discharged in violation of her First Amendment rights, and will be entitled to redress for such a violation. *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

After finding a violation of Sagendorf–Teal's First Amendment rights, the jury was entitled to make its own reasonable determination of the measure of damages, and could award damages for a period longer or shorter than the remaining period of probation. The fact that the plaintiff could have been terminated solely because her probationary period ended does not mean that such a discharge would have occurred in the absence of protected speech, and the jury was not required to find otherwise.

## II. Sagendorf-Teal's Cross–Appeal

### A. County Immunity

■■■ The District Court granted the County's motion for summary judgment because it believed that the County was immune from liability under a provision of the New York Constitution stating that "[t]he County shall never be made responsible for the acts of the sheriff." N.Y. Const. Art. XIII § 13(a). Sagendorf–Teal correctly contends on cross-appeal that because section 1983 is a federal law, it preempts this state provision. *See Weber v. Dell,* 804 F.2d 796, 802–03 & n. 8 (2d Cir.1986). Under section 1983, however, the County would still not be liable unless the action in question was taken

pursuant to its official policy. *Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Since the trial court was not presented with any evidence or allegation of an official policy, it was appropriate for the Court to grant summary judgment in favor of the County.

## B.   State Claims

■   New York Civil Service Law § 75–b (McKinney Supp.1996) provides for specific remedies that may be awarded to an employee who has suffered a retaliatory dismissal. The District Court's dismissal of the state claims was appropriate in this case because the jury awarded back-pay through the date of the verdict, and also made the factual determination that reinstatement was inappropriate.   By this verdict, the jury fully compensated the plaintiff for her injuries. Since state law provides no theory for additional damages, no other state law remedy remained for consideration.

## C.   Dismissal of the Action against McGreevey and Walker

■   The plaintiff contends that the District Court violated the "law of the case" in dismissing the action against defendants McGreevey and Walker.   The "law of the case" doctrine posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case. *DiLaura v. Power Authority of State of New York,* 982 F.2d 73, 76 (2d Cir.1992). The plaintiff asserts that the District Court denied summary judgment to McGreevey and Walker because there were genuine issues of material fact going to their involvement in the termination of the plaintiff.   She further maintains that at trial the plaintiff made the exact showing that the Court stated would be sufficient to send the case to a jury in its denial of summary judgment.   The plaintiff therefore concludes that the trial court violated the law of the case in granting the defendants' motion to dismiss.

■   Even assuming for the sake of argument that all of the plaintiff's contention are true, the trial court did not err.   Application of the "law of the case" doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."   *Id.* at 76 (citations omitted). Among the major grounds justifying such a reconsideration is the availability of new evidence.   *Id.* (citations omitted).   In this case, the trial that intervened between the District Court's denial of summary judgment to McGreevey and Walker and its subsequent grant of their motion to dismiss provided new evidence about their lack of involvement. The District Court therefore was not constrained by the "law of the case" doctrine from reconsidering its prior determination.

## D.   Front-Pay

■   The plaintiff's cross-appeal also challenges the District Court's exercise of discretion to deny her claim for front-pay.   A front-pay award is a proper method for making a discharged employee whole when "the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Padilla v. Metro–North Commuter Railroad,* 92 F.3d 117, 125–26 (2d Cir.1996) (citation omitted).   The District Court denied the motion for front-pay on the ground that the proposed methods for calculating the award were too speculative.   This determination was well within the discretion of the District Court.   *See Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 729 (2d Cir.1984).

## Conclusion

The judgment of the District Court is affirmed.