**Gerald MISHK, Plaintiff,**

v.

**Joseph DESTEFANO, individually, Marlene Brooks, individually, John Zames, individually, Amsel Marks, individually, Louis Ogden, individually, and the City of Middletown, New York, Defendants.**

No. 96 CIV. 9779 (BDP).

United States District Court,
S.D. New York.

May 20, 1998.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff.

Robert N. Isseks, Middletown, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

## INTRODUCTION

Plaintiff Gerald Mishk, a member of the City of Middletown Police Department, com-menced this action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that the defen-dants violated his First Amendment rights by retaliating against him on the basis of his speech.[1] Defendant DeStefano is the mayor of the City of Middletown (the "City") and in such capacity served as chairman of the Po-lice Commission, which, among other things, determines promotions and transfers of per-sonnel. Defendants Brooks, Zames, and Marks were the other members of the Police Commission. Defendant Ogden become the City's Chief of Police in 1994, and prior to that had been a member of the Department.

The defendants have moved for summary judgment, and the individual defendants have also asserted the affirmative defense of quali-fied immunity. For the reasons that follow, the defendants' motion is granted.

## BACKGROUND

Two clusters of events, spanning nearly a decade, form the crux of plaintiff's claims. In 1987, plaintiff was directed to make a recommendation regarding the potential hir-ing by the City's Police Department of a black woman, Yvonne Warner, who had been recruited in part to quell criticisms of the Department's hiring policies. After conduct-ing a background check, plaintiff recom-mended against Warner's appointment, pri-marily because he believed that she was a substance abuser. Plaintiff suspected that Warner had improperly used her position as an undercover investigator for the district attorney's office to gain access to illicit drugs. Despite plaintiff's recommendation, City offi-cials hired Warner, who subsequently re-signed amidst rumors of substance abuse. Warner then filed charges of race and sex discrimination against the City, which were investigated by the City's Police Commission and the State Police Bias Unit. According to the plaintiff, these charges and the ensuing investigation produced a great deal of nega-tive publicity and embarrassment for the City and the Police Commission.

---

**1.** The plaintiff also asserts that defendants violat-ed his right to petition government for redress of grievances. Because right-to-petition claims are subject to the same analysis as speech claims, the two claims will be analyzed jointly. *See White* *Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993)(right-to-petition claims sub-ject to same analysis as speech claims)(quoting *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)).

In 1987 Mishk also agitated for the formation of a Narcotics Unit to curtail the expansion of narcotics use within the City. In spite of political resistance to acknowledging the prevalence of illicit drugs within the City, according to plaintiff, City officials eventually agreed to form a Narcotics Unit as plaintiff had urged. In January 1988, Mishk was appointed to the Unit. In March 1988, Mishk was promoted to Detective and transferred to the Criminal Investigations Unit. Five months later, he was transferred back to the Narcotics Unit.

Four years later, in 1992, Mishk claims that he was retaliated against for his recommendation regarding Warner and his efforts to establish a Narcotics Unit. Defendant Ogden was promoted to second-in-command of the Police Department and in that role assumed some responsibility over the Narcotics Unit. Plaintiff contends that Ogden began to undermine plaintiff's position and authority by micro-managing the Narcotics Unit. Mishk contends that the changes Ogden made to the Narcotics Unit, including a reduction in manpower and the implementation of different procedures, substantially impaired the unit's effectiveness. Mishk was then reassigned from the Narcotics Unit to the Criminal Investigations Unit, where he has remained. This transfer, according to plaintiff, was instigated by Ogden and ordered by the Police Commission. In the Criminal Investigations Unit, as in the Narcotics Unit, Mishk worked as a Detective.

The second set of events occurred in 1996, when Mishk applied for a promotion to the position of Sergeant. Mishk was ranked third on the official civil service eligibility list and was interviewed for the position along with the two top ranked individuals, Detectives Kummer and Heppes. During his interview with the Police Commission, Mishk was questioned about his residency outside of the City and whether his non-resident status affected his job performance. Mishk responded that he did not live in the City because his vigilant enforcement of the drug laws had made him unpopular among drug dealers, who, in the past, had threatened him. Plaintiff also explained that the City was especially dangerous for him in light of the extent to which defendant Ogden had undermined the Narcotics Unit.

Although the members of the Police Commission believed that each of the three candidates was competent and qualified, the Commissioners awarded Kummer the promotion in part based on his superior education and polished presentation during the interview.[2] Defendants DeStefano and Zames later indicated to Mishk that his statements in response to the residency question had harmed his candidacy and played a role in his not being awarded the promotion. Prior to the interview, DeStefano had advised Mishk that his chances of receiving the promotion looked good.

## DISCUSSION

■ A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick*

---

**2.** Kummer is a college graduate and Mishk is not. In addition, the Commissioners perceived that Mishk had a negative feeling about the City, which was reflected in his comments about its dangerousness and drug trafficking.

*v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996).

The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. *Hayes*, 84 F.3d at 619; *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgement. *Wernick*, 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 250, 106 S.Ct. 2505).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *Gallo v. Prudential Residential Services, Limited Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). To oppose successfully a motion for summary judgement, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research*, 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

■ Where the alleged constitutional violation includes a subjective component, as in the case of retaliation claims, the plaintiff, to resist successfully a summary judgment motion, "must offer specific evidence of improper motivation." *Blue v. Koren*, 72 F.3d 1075, 1083 (2d Cir.1995). "If the conduct was objectively reasonable, a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment." *Blue*, 72 F.3d at 1084. Rather, the plaintiff must "proffer particularized evidence of direct or circumstantial facts...supporting the claim of improper motive." *Blue*, 72 F.3d at 1084. The particularized evidence may include "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue*, 72 F.3d at 1084.

*Section 1985 Conspiracy*

■ The complaint asserts claims pursuant to 42 U.S.C. § 1985. 42 U.S.C. § 1985(3) provides that it shall be unlawful for "two or more persons [to conspire] for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." In order to state a claim under § 1985(3), a plaintiff must establish "(1) a conspiracy, (2) motivated by racial or other invidiously discriminatory animus, (3) for the purpose of depriving any person or a class of persons of equal protection or privileges and immunities under the law, (4) that the conspirators committed some act in furtherance of the conspiracy, and (5) that the plaintiffs were injured." *Wintz v. Port Authority of New York and New Jersey*, 551 F.Supp. 1323, 1325 (S.D.N.Y.1982); *see also United Brotherhood of Carpenters Local 610 v. Scott*, 463 U.S. 825, 835–837, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)(class-based animus required for § 1985(3) claim); *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996)(same); *Aulson v. Blanchard*, 83 F.3d 1 (1st Cir.1996) (same).

■ In this case, the plaintiff has not put forth evidence sufficient to support a reasonable inference that racial or other class-based animus motivated any of the defendants' conduct. Plaintiff's bare assertion that he was retaliated against on the basis of his views about the Police Department, drug trafficking, or the City does not satisfy the class-based animus standard. *See Graham v. Henderson*, 89 F.3d at 82 (opposition to workplace policies not a basis for § 1985(3) class); *Aulson v. Blanchard*, 83 F.3d at 5 (individuals jointly engaged in conduct defendant disfavors do not constitute class for § 1985(3) purposes). Therefore, plaintiff's § 1985 conspiracy claim must fail.

*Section 1983 First Amendment Claim*

■ Government employers typically may not take adverse action against employees for exercising their First Amendment rights. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983);

*Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, the government employer does have "a legitimate interest in regulating the speech of its employees that differs significantly from its interest in regulating the speech of people in general." *Piesco v. City of New York,* 933 F.2d 1149, 1155 (2d Cir. 1991) (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993)(quoting *Connick,* 461 U.S. at 146, 103 S.Ct. 1684)(internal quotations omitted).

■ In order to establish a First Amendment violation, the employee must first demonstrate that his speech involved a matter of public concern, and second that the speech was "at least a substantial or motivating factor in the employer's adverse employment action." *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996)(quoting *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993)(internal quotations omitted)); *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994); *Ezekwo v. New York City Health & Hosps. Corp.,* 940 F.2d 775, 780 (2d Cir.1991). "Whether a particular instance of speech relates to a matter of public concern is a question of law to be answered by the Court." *Rao v. NYC Health & Hospitals Corp.,* 905 F.Supp. 1236, 1241 (S.D.N.Y.1995) (citations omitted).

■ Whether an employee's speech addresses a matter of public concern must be "determined by the content, form and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–148, 103 S.Ct. 1684; *Ezekwo,* 940 F.2d at 781. Speech will be characterized as implicating a matter of public concern if it relates to "any matter of political, social or other concern to the community." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. In contrast, issues of merely personal importance to the employee are not matters of public concern. *Connick,* 461 U.S. at 149, 103 S.Ct. 1684. The First

Amendment is not meant to provide constitutional protection to mere employee grievances. *Connick,* 461 U.S. at 154, 103 S.Ct. 1684.

Speech encompassing a wide range of issues has been held to constitute speech on a matter of public concern. *See, e.g., Bernheim v. Litt,* 79 F.3d 318, 325 (2d Cir.1996) (statements by school teacher regarding quality of education in school district held to be a matter of public concern); *Vasbinder v. Ambach,* 926 F.2d 1333, 1341 (2d Cir.1991)(allegation of fraudulent overbilling in federally funded program held to be a matter of public concern); *Rookard v. Health and Hospitals Corp.,* 710 F.2d 41, 46 (2d Cir.1983) (nurse's allegations of corrupt and wasteful practices at municipal hospital held to be speech on a matter of public concern); *Wise v. New York City Police Department,* 928 F.Supp. 355 (S.D.N.Y.1996)(speech regarding sexual harassment in police department held to be a matter of public concern); *Poulsen v. City of North Tonawanda, New York,* 811 F.Supp. 884, 894 (W.D.N.Y.1993)(police woman's allegations of sexual harassment held to constitute speech on a matter of public concern).

■ However, not all workplace speech by government employees may be characterized as involving matters of public concern. *Connick,* 461 U.S. at 149, 103 S.Ct. 1684. Speech that relates primarily to matters of personal interest or internal office affairs, in which the individual speaks as an employee rather than as a citizen, cannot support a First Amendment claim. *White Plains Towing Corp.,* 991 F.2d at 1058 (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684). For example, a personal desire for a particular work assignment is not a matter of public concern. *White Plains Towing Corp.,* 991 F.2d at 1058 (citing *Connick,* 461 U.S. at 148, 103 S.Ct. 1684). Nor are complaints about one's treatment in a professional training program a matter of public concern. *Ezekwo,* 940 F.2d at 781. The fundamental question is whether the employee is seeking to vindicate personal interests or bring to light a matter of political, social, or other concern to the community. *Rao v. NYC Health & Hospitals Corp.,* 905 F.Supp. at 1243. "Even

as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight." *White Plains Towing Corp.*, 991 F.2d at 1059.

In this case, two of the three instances of speech that plaintiff identifies as eliciting retaliatory action are clearly not speech on matters of public concern and thus cannot provide a basis for plaintiff's constitutional claim. First, plaintiff's statements during his interview for the position of Sergeant do not represent speech on a matter of public concern because their primary purpose was to increase his likelihood of promotion. These statements related primarily to plaintiff's personal reasons for having chosen to live outside of the City and were only given in response to questions from members of the Police Commission about why Mishk lived elsewhere than in the City he was assigned to protect. Plaintiff was attempting to further his professional interests and career development rather than to bring to light an issue of social or political significance. While the plaintiff's reference to Ogden having undermined the Narcotics Unit might conceivably, in another context, constitute speech on a matter of public concern, in these circumstances—a statement given in response to a question at an interview for a promotion—plaintiff's statements implicate personal, rather than social, concerns.[3] Mishk was not attempting to highlight the fact that the dangerousness of the City caused many officers to live elsewhere. *See Riedinger v. D'Amicantino*, 974 F.Supp. 322, 330 (S.D.N.Y.1997) (statements related solely to one's own situation are not speech on a matter of public concern). Nor was Mishk seeking primarily to bring about a change in City policy; he was attempting to provide the best possible explanation for why he lived outside the City as well as cast his work with the Narcotics Unit in the best possible light. *See Saulpaugh v. Monroe Community Hos-*

*pital*, 4 F.3d 134, 143 (2d Cir.1993) (statements motivated by and directed to employee's own situation not speech on a matter of public concern).

Second, plaintiff's recommendation not to hire Yvonne Warner was also not speech on a matter of public concern. Plaintiff's performance of the background check and his recommendation regarding her possible appointment were undertaken in the ordinary course of his work. While this fact does not preclude a determination that Mishk's speech implicated matters of social or public significance, the fact that the speech arose during plaintiff's usual performance of his duties weighs strongly against a characterization of plaintiff's speech as relating to a matter of public concern. *Rao v. NYC Health & Hospitals Corp.*, 905 F.Supp. at 1242 (citations omitted). "A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern." *Rao v. NYC Health & Hospitals Corp.*, 905 F.Supp. at 1242 (citations omitted). Mishk's recommendation about Warner may have been important, and his estimation of her may have ultimately proven correct, but it was not speech sufficiently addressed to broad public concerns so as to form the basis of a constitutional claim. Once again, in another context, Mishk's statements about the use of illicit drugs by a government employee might conceivably constitute speech on a matter of public concern. *See White Plains Towing Corp.*, 991 F.2d at 1059. In this case, however, Mishk was not attempting to bring to the public's attention the pervasive use of drugs by government employees or to alter the City's drug screening policy or employment criteria. Rather, Mishk simply expressed his view, as he was requested to do, that the City should not hire an applicant due in part to what he believed to be an on-going substance abuse problem. In sum, in plaintiff's responses to interview

---

**3.** The complaint contains allegations that plaintiff, during his interview, "intended to express" his concerns about the threat that drug trafficking posed for all City officials and his belief that the City needed to bolster its anti-drug efforts.

What plaintiff intended to express, however, has no bearing on this case. The defendants could not conceivably have retaliated against plaintiff based on what he intended to, but did not, express.

questions as well as his recommendation not to hire Warner, he spoke as an employee on matters of personal or professional significance, not as a citizen on matters of public concern. *See Connick*, 461 U.S. at 147, 103 S.Ct. 1684.

■] The only one of plaintiff's activities that arguably involved speech on a matter of public concern was his urging to form a Narcotics Unit. However, Mishk has not offered evidence sufficient to support a reasonable finding that any adverse employment action was taken against him on the basis of such activities. Although Mishk contends that City officials were resistant to acknowledging the extent of illicit drug trafficking within the City, a Narcotics Unit was established, as plaintiff had urged, and he was assigned to the Unit. Plaintiff has offered no admissible evidence sufficient to support a reasonable finding that he was retaliated against for having advocated for the formation of a Narcotics Unit. Indeed, Mishk was promoted to Detective *after* the establishment of the Narcotics Unit.

■ Plaintiff's 1992 transfer from the Narcotics Unit to the Criminal Investigations Unit, which came four years after the speech that allegedly prompted the purported retaliation, cannot form the basis for a finding that plaintiff's constitutional rights were violated. While employment "deprivations less harsh than dismissals" may give rise to a constitutional claim, the claimed adverse employment action must nonetheless relate to a significant aspect of the employment relationship. *Rutan v. Republican Party*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). In order to be actionable, the alleged retaliation must affect the plaintiff's "employment in a way that is both detrimental and substantial." *Bernheim v. Litt*, 79 F.3d 318, 327 (2d Cir.1996)(Jacobs, concurring). In addition to dismissal, adverse employment actions include "demotion, refusal to hire, refusal to promote, and reprimand." *Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir.1995)(citing *Rutan v. Republican Party*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52, *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir.1994)); *see Acevedo v. City of New York*, No. 93 Civ. 3817(RPP), 1995 WL 104113, *3 (S.D.N.Y. Mar.7, 1995)(adverse employment actions include a negative change in employment status such as discharge, suspension, or demotion or disciplinary actions such as reprimand); *cf. Bieluch v. Sullivan*, 999 F.2d 666, 669 (2d Cir.1993) (transfer to town fifteen miles from home allowed to constitute retaliation in support of First Amendment claim).

Mishk has offered no admissible evidence that his position in the Criminal Investigations Unit was in any way less desirable, in terms of salary, work schedule, or responsibilities, than his position in the Narcotics Unit. *See Bal v. Hughes*, No. 92 Civ. 5453(JFK), 1998 WL 43129, *5 (S.D.N.Y. Feb.2, 1998)(requiring objective harm for retaliatory conduct to give rise to a constitutional claim); *Garber v. New York City Police Department*, No. 95 Civ. 2516(JFK), 1997 WL 525396 (S.D.N.Y. Aug.22, 1997)(same). Plaintiff had previously worked in the Criminal Investigations Unit and, by his own account, had performed superbly. Plaintiff's 1992 transfer from the Narcotics Unit to the Criminal Investigation Unit does not satisfy the adverse employment action standard in the absence of any allegation or evidence that the new position was somehow inferior to plaintiff's previous position.[4] *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir.1994)(downward shift in job responsibilities can constitute adverse employment action for purposes of First Amendment claim).

Similarly, Ogden's alleged "undermining" of the Narcotics Unit does not constitute an adverse employment action with respect to plaintiff. Plaintiff's contention, in essence, is that Ogden reorganized the Narcotics Unit in ways with which plaintiff disagreed. *See Connick*, 461 U.S. at 154, 103 S.Ct. 1684 (noting that purpose of First Amendment is not to constitutionalize employee grievances).

---

4. Assuming, *arguendo,* that plaintiff's 1992 transfer to the Criminal Investigations Unit was an adverse employment action, plaintiff has failed to offer any evidence that the 1992 transfer was in retaliation for speech that occurred four years earlier. *See Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994) (causal connection must be sufficient to warrant inference that protected speech was substantial motivating factor in adverse employment action).

Mishk has offered no evidence that the reorganization caused any substantial harm to him through diminution of his responsibilities. *See Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54 (2d Cir. 1987) (suspension, written complaint, and harassment provided basis for First Amendment retaliation claim).

The only one of the alleged instances of retaliatory conduct identified by plaintiff that could satisfy the adverse employment action standard is Mishk's denial of a promotion.[5] But, as discussed above, even if Mishk was denied the promotion due to his statements during the interview, that speech did not relate to a matter of public concern. *See Riedinger v. D'Amicantino,* 974 F.Supp. at 330 (statements related solely to employee's own situation do not touch upon matter of public concern). There is no evidence on the basis of which a reasonable inference could be drawn that Mishk was denied the promotion due to his advocacy for the formation of a Narcotics Unit nearly a decade earlier. Plaintiff identifies not one instances during the intervening years in which any City official made any statements that could be construed as reflecting animus against Mishk based on his role in establishing the Narcotics Unit. Three of the four members of the Police Commission were not on the Commission in 1987 when Mishk spoke out in favor of creating a Narcotics Unit. Thus, on this record, no trier of fact could reasonably conclude that Mishk was denied a promotion in 1996 based on statements that he made nearly 10 years earlier, to which the current decision-makers were not a party, and which had not been the subject of controversy during the intervening period. *See Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994) (causal connection must be sufficient to warrant inference that protected speech was substantial motivating factor in adverse employment action).

**5.** Plaintiff also contends that in September 1997, subsequent to the initiation of this matter, he was told by defendant Ogden that he would not get a promotion because of this lawsuit. In light of the fact that plaintiff has not identified any promotion for which he has or might apply, this

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment for the defendants.

SO ORDERED:

statement alone does not state a claim for a First Amendment violation. *See American Postal Workers Union, AFL–CIO v. United States Postal Service,* 766 F.2d 715, 722 (2d Cir.1985)(specific threat of objective harm required for claim based on chilling of First Amendment rights).