**Ronald DePACE, Plaintiff,**

v.

**Maureen E. FLAHERTY, individually and the Florida Union Free School District, Defendants.**

**No. 00 CIV 4000 LAK.**

United States District Court,
S.D. New York.

Jan. 28, 2002.

Jane Bilus Gould, Lovett & Gould, White Plains, NY, for Plaintiff.

Mark C. Rushfield, Shaw & Perelson, LLP, Poughkeepsie, NY, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Ronald DePace, an elementary school principal, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants the Florida Union Free School District (the "District"), his employer, and Dr. Maureen E. Flaherty, his superinten- dent, acting under color of state law, deprived him of rights guaranteed to him by the First and Fourteenth Amendments. Specifically, he claims that defendants (1) retaliated against him for exercising his constitutionally protected right to free speech and (2) violated his right to equal protection of the laws by handling allegations of DePace's impropriety differently than allegations regarding a similarly situated employee. The case is before the Court on defendants' motion to dismiss for failure to state a claim. In addition, defendant Flaherty asserts a qualified immunity defense.[1]

### Facts

The complaint, the allegations of which are assumed to be true for the purposes of this motion, relates the following account. On October 29, 1999, the Golden Hill Elementary School ("Golden Hill"), of which DePace was and is the principal, held its Costume Bash. Following the event, an altercation broke out between a child and her parent during which the parent became physically abusive and threatened to kill the child. Several parents witnessed the incident, and DePace and the police were notified. DePace requested that a parent locate Superintendent Flaherty, whom DePace believed was attending an event at the District's high school, and ask her to telephone him. The parent located Flaherty at a local bar where she had been drinking heavily. Rather than phoning DePace, Flaherty drove to Golden Hill in an allegedly intoxicated state. After DePace explained the situation to her, Flaherty left the school premises.

In the days following the incident, Flaherty told DePace that it was improper of him to have attempted to locate her on the

---

1. The Court declines defendants' invitation to treat the motion to dismiss as the motion for summary judgment. *See* FED. R. CIV. P. 12(b);

*Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

night of the incident and that by doing so, and locating her in an intoxicated state, he had placed her job at risk. She advised him to seek other employment. On or about November 3, 1999, DePace expressed to Flaherty his opinion that her public drinking and driving while intoxicated were inappropriate and that the fact that she had been discovered while publicly intoxicated should not put his employment at risk.

Plaintiff alleges that, as a proximate result of and in retaliation for his expression of the preceding opinion, Flaherty enlisted the assistance of the Board of Education as well as some of DePace's subordinate staff members in her effort to humiliate DePace publicly and force his resignation by preferring disciplinary charges against him. The charges were based upon allegations of sexual harassment by current and former District employees. DePace alleges that Flaherty knew that the charges were materially false and, indeed, knew that the charges were destined to be an unsuccessful means of getting DePace fired. DePace was suspended from his duties as principal while the charges were pending.

During the pendency of the charges against DePace, the District became aware of allegations of sexual harassment made by a female student against a nontenured male gym teacher. In contrast to the District's treatment of DePace, no formal charges were filed against the gym teacher, nor was the gym teacher suspended.

DePace initiated this lawsuit in May 2000 while he was suspended. Although it is not material to the disposition of the motion, the Court has been advised that a hearing officer found in DePace's favor on all of the charges, with the exception of a charge that he inappropriately touched a female subordinate at a District employee function. He has been reinstated to his position as principal of Golden Hill.

### Discussion

■ The Court may grant a motion to dismiss only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [2]

■ The Supreme Court has expressed a preference that lower courts consider whether a plaintiff properly has alleged a deprivation of a constitutional right before proceeding to evaluate a qualified immunity defense.[3] In consequence, the Court considers whether DePace's claims allege constitutional violations before turning to the question of Flaherty's qualified immunity.

### A. DePace's First Amendment Claim

■ To make out a First Amendment retaliation claim under Section 1983, DePace must allege that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment action, and (3) a causal connection exists between his speech and the adverse employment determination against him, so that it can be said that his speech was a motivating factor in the determination." [4]

### 1. Constitutionally Protected Speech

■ Speech by a public employee is constitutionally protected if it relates to a

---

**2.** *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

**3.** *County of Sacramento v. Lewis*, 523 U.S. 833, 842 & n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998).

**4.** *Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 553 (2d Cir.2001); *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999).

matter of legitimate public concern.[5] Whether an employee's speech is constitutionally protected is a question of law and is determined by the content, form, and context of a given statement.[6]

■ Certainly the propriety of a superintendent's public drinking, drinking and driving, and appearance at a school event, in an allegedly intoxicated state is a matter of "political, social or other concern to the community."[7] In expressing his view on the subject, DePace was not voicing his concern over internal office affairs nor, for the most part, with Flaherty's treatment of him generally. His statement on November 3, 1999, concerned primarily his opinion regarding the impropriety of Flaherty's public drinking, and it is this opinion that DePace correctly claims is speech on a matter of public concern.

To say that his comment regarding Flaherty's drinking might be entitled to constitutional protection in one context, however, is not to say that it is entitled to such protection in every context.[8] Defendants argue that DePace's First Amendment right to make those comments "is entitled to little weight"[9] because he raised the issue of Flaherty's drinking in the context of an attempt to save his own job (a characterization with which DePace takes issue). Courts have found that otherwise-protected comments were not entitled to protection when made in the context of job interviews,[10] expressions of internal office dissatisfaction,[11] and attempts to increase personal work assignments.[12] In this case, however, the fact that DePace's comment about Flaherty's drinking was followed by a comment about his own employment does not so alter the context of his telling his superintendent his views on her alleged public drunkenness as to take those comments out of the realm of public concern. While it may be possible to infer that DePace hoped to save his job by speaking with Flaherty on November 3, it is possible also to infer the opposite: DePace actually was acting purely in the public, and against his own, interest, as his comments on the propriety of Flaherty's drinking were likely to anger her. In

---

**5.** *Gorman–Bakos*, 252 F.3d at 554. In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court explained that "[t]he question of whether expression is of a kind that is of legitimate concern to the public is also the standard in determining whether a common-law action for invasion of privacy is present." 461 U.S. at 143 n. 5, 103 S.Ct. 1684; *see also Mishk v. Destefano*, 5 F.Supp.2d 194, 200 (S.D.N.Y. 1998) (collecting examples).

**6.** *Connick*, 461 U.S. at 148 & n. 7, 103 S.Ct. 1684. In this case, the mere fact that the comments were not made in a public forum sheds no light on whether the comments amount to protected speech. *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [freedom of speech] is lost to the public employee who arranges to communicate privately with his

employer rather than to spread his views before the public.").

**7.** *Mishk*, 5 F.Supp.2d at 200 (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684).

**8.** *Connick*, 461 U.S. at 154, 103 S.Ct. 1684; *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993); *Mishk*, 5 F.Supp.2d at 201.

**9.** *See, e.g., White Plains Towing*, 991 F.2d at 1059; *Mishk*, 5 F.Supp.2d at 200–01 (holding that comments made during promotion interview were not speech on matter of public concern because they were made primarily to increase the chances of getting the promotion).

**10.** *Mishk*, 5 F.Supp.2d at 201.

**11.** *Connick*, 461 U.S. at 148, 103 S.Ct. 1684.

**12.** *White Plains Towing*, 991 F.2d at 1060.

any case, this Court cannot draw an inference against the nonmovant on a motion to dismiss. Based on the content, form and context of DePace's comments, as alleged in the complaint, the Court cannot exclude the possibility that they were constitutionally protected.

### 2. Adverse Employment Action

■ To meet the second prong of the *prima facie* case, DePace asserts that his suspension and the preferment of charges against him, in addition to the loss of a salary increase during his suspension, were adverse employment actions.

Courts in this Circuit have defined adverse employment action broadly and have held that it includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" as well as "lesser actions." [13] While there may be a "dearth of caselaw on what degree of harm is necessary to support a First Amendment violation," [14] it is clear to this Court that the threat of termination, the knowing filing of allegedly meritless charges of sexual harassment and a one-year paid suspension during which the plaintiff did not receive a pay increase suffice to allege adverse employment action. DePace therefore satisfies the second prong of the *prima facie* case.

### 3. Causal Connection

■ Causation generally is a question for the finder of fact. On this motion, the role of the Court is to determine whether DePace has alleged facts that could support a reasonable finding of a causal connection between his protected speech and the adverse employment action. A plaintiff must offer more than conclusory allegations to defeat a motion to dismiss, and DePace has done so.

A jury would be entitled to find, based on the facts DePace has alleged, that Flaherty retaliated against DePace for his November 3 expression of opinion on the behavior she displayed on the night of the Costume Bash. That DePace made these comments after Flaherty initially had threatened his job is of no moment. Based on the facts alleged, a jury could find that, while Flaherty was embarrassed on the night of the Costume Bash, it was not until DePace confronted her with his views of her conduct that she took action against him and thus it was not until he voiced his opinion that she developed the intent to retaliate against DePace by preferring the charges against him.

Defendants argue that the time lag between DePace's comments and the formal preferrment of charges against him indicates a lack of causation. The jury would be entitled so to find, but such a finding would not be required. The jury would be entitled equally to find that the time lag merely reflected the amount of time it took Flaherty to convince others to go along with her plan of retaliating against DePace.

**13.** *Morris,* 196 at 110 (2d Cir.1999). The Fifth Circuit opinion cited by defendants in their reply brief for the proposition that the denial of a merit pay increase cannot constitute an adverse employment action, *Harrington v. Harris,* 108 F.3d 598 (5th Cir.1997), was withdrawn and replaced with an opinion noting that the plaintiffs in that case actually had received the merit pay increase in question, albeit a smaller one than their colleagues received, and that the court might have reached a different conclusion as to whether there had been an adverse employment action had the plaintiffs received no increase. *See Harrington v. Harris,* 118 F.3d 359, 366 (5th Cir.1997).

**14.** *Garber v. New York City Police Department,* 95 Civ. 2516(JFK), 1997 WL 525396, at *5 (S.D.N.Y.1997), *aff'd* 159 F.3d 1346, 1998 WL 514222 (2d Cir.1998).

Furthermore, DePace need not allege that retaliation was the only factor upon which the adverse employment action was based to state a Section 1983 claim. He must establish only that the speech in question was a "substantial" or "motivating" factor.[15] A jury could find that the adverse employment action was caused both by Flaherty's embarrassment and DePace's speech. In that event, a jury would be entitled to find that DePace's expression of his opinion regarding Flaherty's drinking was a substantial or motivating factor in Flaherty's decision to prefer disciplinary charges against him.

### 4. Balance of Interests

■ Although public employees do not relinquish all First Amendment rights that nonpublic employees enjoy, government employers have interests in regulating the speech of employees that differ from their interest in regulating the speech of other citizens.[16] A government employer may take adverse employment action against an employee because his or her speech is or threatens to be disruptive.[17]

■ In determining whether adverse employment action following the exercise of First Amendment rights is permissible, courts employ an interest balancing test. The well-established factors are whether: "(1) the employer's prediction of disruption is reasonable; (2) the potential disruptiveness is enough to outweigh the value of the

speech; and (3) the employer took action against the employee based on this disruption and not in retaliation for the speech." [18]

The complaint here does not even begin to suggest that defendants thought that plaintiff's comments to Flaherty presaged disruption, much less that they acted on a threat of such disruption rather than in retaliation for the comments themselves. Plaintiff's First Amendment claim therefore is legally sufficient.

### B. DePace's Equal Protection Claim

■ In order to state an equal protection claim, DePace must allege that (1) he was treated differently than others similarly situated, and (2) such selective treatment was based on impermissible considerations, in this case his exercise of his First Amendment rights.[19] Whether two people are situated similarly ordinarily is a question of fact for the jury.[20] In consequence, the Court's role in determining whether DePace's equal protection claim is sufficient to survive defendants' motion to dismiss is limited to whether he sufficiently alleges facts that would enable a reasonable jury to find in his favor.

### 1. Was DePace Treated Differently than Others Similarly Situated?

■ To be situated similarly, the employees at issue need not be identical, but

**15.** *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

**16.** *See Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

**17.** *See Jeffries v. Harleston,* 52 F.3d 9, 13 (2d Cir.1995). But adverse employment action cannot be taken against a public employee because of their speech. *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996) ("Such

'retaliatory' discharge is always unconstitutional.").

**18.** *See Jeffries,* 52 F.3d at 13.

**19.** *See, e.g., Crowley v. Courville,* 76 F.3d 47, 52–53 (citations omitted); *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995); *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992).

**20.** *Graham v. Long Island Rail Road,* 230 F.3d 34, 39 (2d Cir.2000).

they must be similar in "all material respects."[21] The Second Circuit recently boiled down the "all material respects" standard to two determinations: (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards, and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.[22]

■■■ Defendants argue that DePace has not satisfied the requirement that the employees be subject to the same workplace standards because state law provides different means of disciplining principals and nontentured teachers.[23] They claim that DePace and the gym teacher were not similarly situated because New York law imposes substantial procedural mechanisms on the discipline of one in DePace's position, while it permits nontenured employees to be disciplined much more easily.[24]

This argument is far from compelling, as it focuses on the procedural protections afforded to educators rather than on the standards of conduct to which they are held. A jury would be entitled to find that DePace and the gym teacher were held to the same workplace standards and that those standards prohibited sexual harassment by any district employee. The differences in procedure are not material to the issue.

As to the second prong of the inquiry, DePace has alleged conduct by the gym teacher that a trier of fact could find was of seriousness comparable to the conduct alleged in the preferred charges despite the fact that the gym teacher's alleged behavior concerned a student while DePace's concerned staff members.

In determining whether two employees are similarly situated for equal protection purposes, "exact correlation is neither likely nor necessary;" the test is whether a prudent person would think them roughly equivalent.[25] DePace sufficiently has alleged facts that would permit a jury to find that they were.

### 2. Was the Allegedly Different Treatment Based on Impermissible Considerations?

As discussed above, DePace has alleged facts sufficient to permit a jury to find that defendants' behavior in preffering the charges against him was a result of his constitutionally protected speech. These facts would permit a jury also to find that Flaherty and the District treated DePace differently than they treated the gym teacher, who is not alleged to have spoken out on Flaherty's drinking, because of DePace's constitutionally protected speech.

Because the complaint alleges facts sufficient to support a jury finding of an equal protection violation, defendants' motion to dismiss is denied as to DePace's equal protection claim.

### C. Qualified Immunity

As DePace adequately has alleged violations of his constitutional rights, this Court must reach the question of Flaherty's claim of qualified immunity.

■■■ State officials are shielded from personal liability for damages "if their ac-

---

**21.** *Shumway v. United Parcel Service,* 118 F.3d 60, 64 (2d Cir.1997).

**22.** *Graham,* 230 F.3d at 40.

**23.** *See* N.Y. Educ. L. § 3020–a (McKinney 2001).

**24.** *See id.*

**25.** *Penlyn Dev. Corp. v. Incorporated Village of Lloyd Harbor,* 51 F.Supp.2d 255, 264 (E.D.N.Y.1999).

tions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.' "[26] In other words, a government actor performing a discretionary task is entitled to immunity from Section 1983 suits if either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."[27]

### 1. Was the Law on DePace's First Amendment and Equal Protection Claims Clearly Established?

■ As discussed above, DePace sufficiently has alleged facts to state a claim that defendants undertook the alleged adverse employment actions in response to his exercise of his First Amendment rights and in violation of his right to the equal protection of the laws. His right to be free from such adverse employment actions because of his speech was established clearly before the actions that gave rise to the complaint occurred.

It long has been established by the Supreme Court and the Second Circuit that, "[a]s a general rule, employees may not be dismissed for the exercise of their First Amendment rights."[28] It is well established also that these First Amendment rights include the right to criticize public officials, such as a school superintendent.[29] Thus the contours of the rights invoked on the face of the complaint, whether the First Amendment and the Equal Protection Clause protected DePace from adverse employment action against him in response to his comments to Flaherty, were clearly established long before November 3, 1999.[30] As the Supreme Court said in *Anderson v. Creighton*, to say that the contours of a right must be clearly established "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."[31] In light of law that antedated the events of this case, the unlawfulness of the disciplining of or discrimination against a public employee as a result of speech such as this was apparent.

### 2. Were Flaherty's Actions Objectively Reasonable?

Flaherty still would be entitled to qualified immunity, despite the fact that the alleged conduct violated clearly established law, if it was objectively reasonable for her to believe that her actions did not violate DePace's rights.[32] The qualified immunity inquiry, then, focuses on whether Flaherty's actions were objectively reasonable.

An employer's actual, subjective motive in taking the adverse employment action is

---

**26.** *White Plains Towing,* 991 F.2d at 1063 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

**27.** *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996); *see Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999).

**28.** *Kaluczky v. City of White Plains,* 57 F.3d 202, 208; *see Elrod v. Burns,* 427 U.S. 347, 360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

**29.** *See, e.g., New York Times Co. v. Sullivan,* 376 U.S. 254, 282, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

**30.** *See Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 276 (2d Cir.1996) ("The right to be free of adverse employment action by a public employer for the exercise of First Amendment rights was firmly established prior to . . . this case."); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993).

**31.** 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

**32.** *Goldman v. Belden,* 754 F.2d 1059, 1064 (2d Cir.1985) (citing *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034).

relevant to the qualified immunity inquiry.[33]  The complaint adequately alleges that Flaherty undertook the adverse employment actions at issue in this case *because of* DePace's expression of his view that it was inappropriate for her to appear at a school event and to drive while intoxicated, *i.e.,* because of his speech, not because of any potential disruption the speech might cause.[34]  It would have been objectively unreasonable for Flaherty to believe that adverse employment action against and unequal treatment of an employee who exercised his First Amendment rights was permissible.  Qualified immunity therefore is not available to Flaherty at this time.

Whether the complaint accurately describes what occurred, of course, remains to be seen.[35]  Further development of the case may reveal facts upon which a defense of qualified immunity might be based.  This ruling therefore is without prejudice to the assertion of the defense at later stages of this case.

### Conclusion

Defendants' motion to dismiss is denied in all respects.

SO ORDERED.

---

**33.** *Sheppard,* 94 F.3d at 828; *see also Delbene v. Alesio,* 00 Civ. 7441(CM), 2001 WL 170801, at *13 (S.D.N.Y.2001).

**34.** To defeat a claim of qualified immunity at the summary judgment stage, a plaintiff must allege "particularized evidence of direct or circumstantial facts" supporting his claim of unconstitutional motive. *Sheppard,* 94 F.3d at 828.  The Court has declined the invitation to convert the instant motion to dismiss into one for summary judgment.  In consequence, DePace is not required to meet the summary judgment standard at this time.   ·

**35.** The resolution of other questions of fact may be relevant to the availability of a qualified immunity defense as well.  For example, courts in this circuit have held that otherwise-protected speech no longer is protected when it occurs in the course of an employee's attempt at personal advancement.  Thus if the evidence showed that DePace made his comments regarding Flaherty's drinking in an effort to advance his own career, it would be entitled to find also that Flaherty was reasonable in believing that she could retaliate or discriminate against him because of those comments.