Meridith **PERSAUD** and Peter Persaud, Plaintiffs,

v.

Peter **McSORLEY**, Jr. and Terry T. Muller, Defendants.

No. 02 CIV. 2560(WCC).

United States District Court, S.D. New York.

Aug. 4, 2003.

Lovett & Gould, Attorneys for Plaintiffs, White Plains, Kim Berg, Esq., Of Counsel.

Eliot Spitzer, Attorney General of the State of New York, Attorneys for Defendant Peter McSorley, Jr., New York, Daniel A. Schulze, Donald Nowve, Asst. Attorney Generals, Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs, Meridith Persaud ("M.Persaud") and Peter Persaud ("P.Persaud") bring this action against defendants Peter T. McSorley, Jr. ("McSorley"), a New York State trooper and Terry T. Muller ("Muller"), a Village of Fishkill ("Fishkill") firefighter. M. Persaud sues under 42 U.S.C. § 1983, alleging, on a third-party standing basis, that defendants' conduct and/or retaliatory conduct violated P. Persaud's rights guaranteed by the First Amendment to the United States Constitution. Both plaintiffs allege that defendant Muller's conduct was negligent and/or reckless and violated plaintiffs' rights under New York State law.[1]

Defendant McSorley has moved for summary judgment pursuant to FED. R. CIV. P. 56 dismissing plaintiff M. Persaud's First Amendment claim on grounds that (1) M. Persaud's conviction in Justice Court is

---

1. In their Complaint, plaintiffs brought an additional claim against defendants alleging that their conduct constitutes an unlawful selective prosecution violative of plaintiffs' rights as guaranteed under the Fourteenth Amendment. However, since discovery in this matter has concluded, plaintiffs concede that they do not have a sufficient basis for pursuit of that claim. Plaintiffs have therefore withdrawn that claim with prejudice and a Stipulation of Dismissal has been forwarded to defense counsel for their signature.

conclusive evidence that McSorley had probable cause to issue her a traffic ticket, (2) McSorley's issuance of an $85 traffic ticket neither chilled plaintiffs' speech nor would it have chilled a reasonable person's speech, (3) McSorley is entitled to qualified immunity and (4) the Court lacks subject matter jurisdiction over plaintiff M. Persaud's claims against McSorley under the Rooker–Feldman doctrine. For the reasons discussed below, McSorley's motion is granted.

## BACKGROUND

On November 9, 2001, M. Persaud was driving East on Church Street in Fishkill and stopped for a red light at the intersection of Church Street and Route 9. (M. Persaud Dep. at 13–15.) When she entered the intersection, her vehicle was struck by a pickup truck driven by co-defendant Muller heading South on Route 9. (Muller Dep. at 27–34.) M. Persaud testified at deposition that she had a green light when she entered the intersection and that defendant Muller drove through the red light controlling his lane of traffic and struck M. Persaud's driver's side door. (M. Persaud Dep. at 19–20.) Defendants testified that M. Persaud ran a red light when entering the intersection.[2] (Muller Dep. at 27–34; McSorley Dep. at 52, 56–58.) As shown herein, this factual dispute is not relevant for purposes of this motion. The only evidence we can find with respect to the extent of M. Persaud's injuries is the statement given to Captain Robert Hughes of the New York State Police by P. Persaud.[3]

McSorley secured the accident scene, saw that medical attention was being provided to the victims, and collected information for the accident report, but did not then issue tickets to either party involved in the collision. (McSorley Dep. at 61, 72, 98–99, 102–03, 152.) Emergency personnel transported M. Persaud and Muller to the same hospital. Upon their arrival at the hospital, the EMT attending to Muller advised nurse Mariana Shaut that Muller was possibly intoxicated. Accordingly, at approximately 6:30 p.m., Shaut telephoned the New York State Police to inquire if anyone would be responding to the hospital to perform a blood alcohol test and investigate Muller's possible intoxication. (Pls. Mem. Opp. Summ. J. at 3.) She was advised that the trooper who handled the accident would be notified. When P. Persaud arrived at the hospital sometime thereafter, Nurse Shaut informed him that the EMT had raised a question about Muller's intoxication and that she had already called the State Police. (Id.) At approximately 7:00 p.m., when no one had yet arrived from the State Police, P. Persaud contacted the State Police barracks himself to inquire as to why Muller's intoxication was not being investigated in connection with the accident. H e expressed concern that the accident was not being investigated thoroughly and properly. (Id. at 4.)

P. Persaud eventually spoke to McSorley, insisted that someone come down to the hospital and asked to speak to a supervisor.[4] P. Persaud called the State Police

2. McSorley was stopped in his patrol car at the intersection of Route 9 and Church Street at the time of the accident. (McSorley Dep. at 52, 56–58.)

3. P. Persaud indicated in that statement that his wife was laid out on a stretcher in the emergency room, crying and in severe pain. (Def. Mem. Supp. Summ. J., Ex. G at 3.)

4. Plaintiffs claim that McSorley told P. Persaud that he was not coming to the hospital, his shift had ended and he was on his way home. (Pls. Mem. Opp. Summ. J. at 3.) McSorley alleges that he informed P. Persaud that he had just received permission for overtime and that he would be coming to the emergency room. (P. Persaud Dep. at 28–34.)

again a few minutes later, repeating his insistence that someone come to the hospital and repeating his demand to speak to a supervisor. He was informed that McSorley was on his way to the hospital. (McSorley Dep. at 37, 41, 44–45.)[5] McSorley arrived at the hospital and subjected Muller to an alcosensor test, which returned a positive reading. He then informed Muller that he had tested positive for the presence of alcohol and would be charged with driving while intoxicated, and Muller agreed to submit to a blood alcohol test. (*Id.* at 145–46). McSorley then placed Muller under arrest, had him come to the police barracks and issued a ticket to Muller charging him with driving while intoxicated in violation of Vehicle & Traffic Law § 1192(3). (Def. Rule 56.1 Stmt. ¶ 1.)

McSorley then proceeded to speak with the Persauds. McSorley informed the Persauds that he had witnessed the accident and had seen M. Persaud run a red light, and that he was going to issue two tickets to M. Persaud—charging her with the failure to wear a seat belt while operating a motor vehicle in violation of Vehicle & Traffic Law § 1229(C)(3)[6], and passing a red light in violation of Vehicle & Traffic Law § 1111(D)(1). (M. Persaud Dep. at 96, 101.) Around this time, a "heated conversation" ensued between McSorley and P. Persaud wherein P. Persaud questioned McSorley's handling of the accident investigation and accused him of engaging in a "coverup" to protect Muller because he was a firefighter, during which P. Persaud insisted that McSorley handcuff Muller.

(P. Persaud Dep. at 64–68; Def. Mem. Supp. Summ. J., Ex. G at 11–14, 18–19.) During this conversation, McSorley apparently told P. Persaud that he did not appreciate him trying to tell McSorley how to do his job and that he (McSorley) was not going to lose his job over this accident. (Pls. Mem. Opp. Summ. J. at 5.) At the end of the heated conversation, P. Persaud told his wife not to say anything else and he indicated to McSorley that he was going to do the same. (Def. Mem. Supp. Summ. J., Ex. G at 13.)

A traffic trial for the red light ticket was held on September 16, 2002 in the Fishkill Justice Court. M. Persaud was convicted and required to pay a fine. (*Id.*) Plaintiffs then filed the instant lawsuit. As a result, an internal affairs investigation was conducted by Captain Hughes. He concluded that McSorley engaged in misconduct, did not properly investigate the accident and should be disciplined by a five-day loss of pay.

## DISCUSSION

### I. *Summary Judgment Standard*

Defendant moves for summary judgment pursuant to FED.R. CIV.P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving

---

**5.** According to plaintiffs, McSorley told his supervisor Lt. George Nohai that "since Mr. Persaud was complaining he would have to issue Mrs. Persaud a ticket for running the red light which was the cause of the accident in order to protect himself against any allegations made by Mr. Persaud." (Nohai Dep. at 83, 118–19.) Additionally, plaintiffs claim that upon arrival to the hospital, McSorley interrogated Nurse Shaut in a defensive man-

ner as to why she called the State Police about Muller and that "if Mr. Persaud was going to push this issue, that he was going to give his wife a ticket for running a red light." (Shaut Dep. at 50–52.)

**6.** M. Persaud admits that she was not wearing her seat belt at the time of the accident, and that she informed McSorley of this before the ticket was issued. (M. Persaud Dep. at 96.)

party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali,* 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.,* 947 F.2d 1021, 1022 (2d Cir.1991).

## II. *First Amendment Claim*

■ We need not address the other grounds for summary judgment McSorley raises because we conclude as a matter of law that there is insufficient evidence to support M. Persaud's First Amendment claim.[7] The Court recognizes that, as a general rule, a litigant may not assert the rights of others to obtain relief from injury to themselves. *See Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). There is an exception to this general rule, however, when (1) the third-party's enjoyment of the right in question is "inextricably bound up with the activity the litigant wishes to pursue," and (2) the third-party is unable to assert his or her own right. *Id.* at 113–14, 96 S.Ct. 2868;

*see also Nat'l Union of Hosp. and Health Care Emp. RWDSU, AFL–CIO v. Carey,* 557 F.2d 278, 281 (2d Cir.1977); *Dangler v. Yorktown Central Schools,* 771 F.Supp. 625, 630 (S.D.N.Y.1991).

■ Here, plaintiffs have alleged that M. Persaud was issued the traffic tickets as a result of P. Persaud's repeated and forceful expression of opinion with respect to the manner in which McSorley handled the accident. The Court believes that P. Persaud's enjoyment of his First Amendment rights is inextricably bound up with M. Persaud's interest in not receiving the traffic tickets. Moreover, on the basis of the allegations in the Complaint, the Court concludes that P. Persaud does not have standing to assert his own right because he has not suffered an injury in fact.[8] Accordingly, the Court finds that M. Persaud has stated a First Amendment claim for relief against McSorley. *See Kounitz v. Slaatten* 901 F.Supp. 650, 655 (S.D.N.Y. 1995).

■ However, we conclude that P. Persaud has not suffered a violation of his First Amendment rights. To prevail on a First Amendment retaliation claim, plaintiff must prove that: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right. *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998). The Supreme Court has held that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific fu-

---

**7.** M. Persaud's First Amendment claim alleges that "Under the premises Defendants conduct and/or retaliatory conduct violated Plaintiff's rights, privileges and immunities, on a third-party standing basis, as guaranteed her by reason of the First Amendment to the

United States Constitution, 42 U.S.C. § 1983." (Complt.¶ 24.)

**8.** It is M. Persaud who suffered the injury because she was issued the traffic tickets.

ture harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). In the case at bar, despite plaintiffs' charge that M. Persaud was issued the two traffic tickets in retaliation for P. Persaud's comments at the hospital, the record reveals that McSorley and P. Persaud were engaged in the heated conversation both before and after McSorley wrote the traffic tickets. (P. Persaud Dep. at 60–63 [9]; Def. Mem. Supp. Summ. J., Ex. G at 13.) The Second Circuit has held that where a party can show no change in his behavior, he has quite plainly shown no chilling of First Amendment right to free speech. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 120 (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford,* 954 F.2d 63, 67 (2d Cir.1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Additionally, P. Persaud's voluntary statement on May 28, 2002 to Captain Hughes further militates against a finding that his speech was chilled. During that statement, P. Persaud fully recounted the events and dialogue between himself and McSorley while the two were at the hospital. P. Persaud also expressed his opinion and concern to Captain Hughes as to McSorley's incompetence in handling the investigation and even stated his theory as to why McSorley did not take any action at the scene. *See Carlucci v. Kalsched,* 78 F.Supp.2d 246, 253–54 (S.D.N.Y.2000) (dismissing First Amendment claim because plaintiff's expressions of concern to State investigator demonstrated that her speech was not chilled).

In sum, P. Persaud showed no reluctance in expressing his concerns about McSorley's handling of the accident investigation, stating them repeatedly and forcefully and even complaining to McSorley's superior, Captain Hughes, who conducted an internal affairs investigation in the matter. Consequently, M. Persaud's claim that P. Persaud's First Amendment rights were violated fails as a matter of law because there is no indication that the exercise of those rights was actually chilled.

The Court notes that M. Persaud's First Amendment claim against McSorley may have survived if it could have been shown that she suffered a significant harm, that is, if M. Persaud were issued the traffic ticket without justification and in retaliation by McSorley for P. Persaud's persistent and forceful criticism of his handling of the accident investigation. However, M. Persaud's conviction in the Fishkill Justice Court of the charge of passing a red light establishes that there was a legitimate basis for issuance of the ticket. We conclude therefore that M. Persaud did not herself suffer the harm necessary to support her retaliation claim.

### CONCLUSION

For the foregoing reasons, defendant McSorley's motion for summary judgment dismissing plaintiff M. Persaud's First Amendment claim is granted.

SO ORDERED.

---

9. During his deposition, P. Persaud was asked whether he said anything to McSorley when McSorley wrote the ticket. P. Persaud responded: "While he was writing it we were in conversation. I kept questioning him as to his—where was he positioned, did he go back and check the cycle of the light to make sure the light was working at the time and he ...." (P. Persaud Dep. at 61–62.)