ESTATE OF Brian Patrick MORRIS, by Janine Morris, Administratrix, Plaintiff,

v.

Bart DAPOLITO, individually, Paul M. Siragusa, individually, Michael V. Yazurlo, individually, Douglas Reich, individually, Anthony Buonocore, individually, Sheree Raho, individually, Patrick Gallo, individually, Frank Coleman, individually, Richard Maurer, individually, Sal Rossi, individually, Thomas Gannalo, individually, Robert Mannis, individually, Mario Astorita, individually, David Speidell, individually, the Tuckahoe Union Free School District and the Town of Eastchester, N.Y., Defendants.

No. 03 CIV. 6641(WCC).

United States District Court, S.D. New York.

Jan. 12, 2004.

Lovett & Gould, Attorneys for Plaintiff, White Plains, NY, Kim Berg, Esq., Of Counsel.

Girvin & Ferlazzo, P.C., Attorneys for Defendants Paul M. Siragusa, Michael V. Yazurlo, Douglas Reich, Anthony Buonocore, Sheree Raho, Patrick Gallo, Frank Coleman and Tuckahoe Union Free School District, Albany, NY, Patrick J. Fitzgerald, Esq., Of Counsel.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Attorneys for Defendants Mario Astorita, David Speidell and the Town of Eastchester, New York, White Plains, NY, John M. Flannery, Esq., Joanna M. Topping, Esq., Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Janine Morris, Administratrix of the Estate of Brian Patrick Morris ("Brian"), brings this action pursuant to 42 U.S.C. § 1983 against: (1) Bart Dapolito, Paul M. Siragusa, Michael V. Yazurlo, Douglas Reich, Anthony Buonocore, Sheree Raho, Patrick Gallo, Frank Coleman and the Tuckahoe Union Free School District (the "District") (collectively, "school defendants"); and (2) Mario Astorita, David Speidell and the Town of Eastchester (the "Town") (collectively, "police defendants").[1]

Dapolito is a tenured physical education teacher at the Tuckahoe High School (the "School"), where Brian was a seventeen year-old high school senior. (Am.Complt. ¶¶ 3–4.) Siragusa was the principal of the School and Yazurlo was the superintendent of the District at the time of the incident giving rise to this action. (Id. ¶¶ 4–5.) Defendants Reich, Buonocore, Raho, Gallo and Coleman were the elected members of the District's board of education during 2003. Astorita is a detective lieutenant in the Town's police department and Speidell is the chief of that department. (Id. ¶¶ 10–11.) Specifically, plaintiff claims that: (1) Dapolito and the District violated Brian's Fourteenth Amendment rights to substantive due process when Dapolito assaulted him at the School; (2) Yazurlo, Siragusa, the District, Reich, Buonocore, Raho, Gallo and Coleman violated Brian's Fourteenth Amendment rights by engaging in a retaliatory selective prosecution of him; and (3) Yazurlo, Siragusa, the District, Reich, Buonocore, Raho, Gallo, Coleman and Astorita conspired and retaliated against Brian in violation of his First Amendment rights.[2] (Id. ¶¶ 57–62.) Defendants now move to dismiss the second and third counts of the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim for which relief can be granted. For the reasons set forth herein, school defendants' motion to dismiss the second count of the Amended Complaint is granted. Defendants' motion to dismiss the third count of the Amended Complaint is denied. Plaintiff is granted leave to file a Second Amended Complaint within thirty days of the issuance of this Opinion and Order.

## BACKGROUND

The following statement of facts is based on the allegations in plaintiff's Amended Complaint, which, for the purposes of this motion, we assume to be true.[3] Brian was

---

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff initially had brought a substantive due process claim against additional defendants Sal Rossi, Thomas Gannalo, Robert Mannis and Richard Maurer, who were participants in the process by which Dapolito received tenure. (Am.Complt.¶¶ 8–9.) See infra note 4. Plaintiff has, however, agreed to the discontinuance with prejudice of this claim against these defendants. (Oct. 22, 2003 Stip. of Discont.)

3. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir.1993); In re AES Corp. Sec. Litig., 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

a seventeen year-old student enrolled in the District's high school. (Am.Complt. ¶ 3.) He was extremely popular and a star athlete who had won a sports scholarship to Concordia College where he was scheduled to commence his freshman year in the Fall of 2003. (*Id.*) On April 24, 2003, Brian was assigned to study hall in the high school cafeteria, during which time he engaged in an arm-wrestling match with a classmate. (*Id.* ¶ 22.) During that arm-wrestling match, Dapolito, a tenured[4] gym teacher, approached Brian from behind and placed him in a choke-hold by clamping Brian's throat with his forearm. (*Id.* ¶ 23.) Dapolito lifted Brian off of the chair and threw him into a metal cafeteria table that broke in half on impact. (*Id.*) This caused Brian to suffer throat and back injuries. (*Id.*) Dapolito then ordered Brian and his classmate to go to Siragusa's office. (*Id.* ¶ 24.) At the office, Siragusa was given each party's version of the assault, but elected to do nothing about it. (*Id.*) Siragusa then directed Dapolito to return to the cafeteria. (*Id.*)

Shortly thereafter, Siragusa directed Brian and his classmate to return to the cafeteria as well. (*Id.*) When Brian entered the cafeteria, he approached Dapolito to apologize for the earlier incident. (*Id.* ¶ 25.) In response, Dapolito told Brian: "Don't come any closer or I'll drop you." (*Id.*) Brian responded by pushing a chair at Dapolito, at which point Dapolito yelled "No one fuckin' embarrasses me in front of my children" and ordered Brian to return to Siragusa's office. (*Id.* ¶ 26.)

Back in Siragusa's office, Dapolito ordered Siragusa's staff to call the police; they refused pursuant to a policy that permits only the superintendent of schools to summon law enforcement officials to school grounds. (*Id.* ¶ 27.) Dapolito grew even more enraged, grabbed the phone and called the police. (*Id.* ¶ 28.) Dapolito then overheard Brian telling Siragusa truthfully about the two assaults in the cafeteria. (*Id.*) Siragusa then had an oral exchange with Brian, after which Dapolito charged into Siragusa's office and knocked Siragusa to the floor. (*Id.* ¶ 29.) Dapolito then attacked Brian and pushed him backwards over Siragusa's desk while choking him, strangling him with his neck chain, banging his head into a desktop, punching him in the face and stomach, and throwing him to the floor. (*Id.* ¶ 30.)

Siragusa ordered Dapolito to stop the attack, but Dapolito ignored him. (*Id.*) Concerned that Dapolito might kill Brian, Siragusa then physically intervened. (*Id.* ¶ 31.) Siragusa was again thrown to the floor and was not able to pull Dapolito off Brian until another student interceded. (*Id.*) Brian suffered numerous injuries during this altercation, including cuts, bruises and contusions. (*Id.*) When the police arrived, Dapolito feigned a heart attack on the advice of his union representative and was transported to the hospital. (*Id.*)

After Brian received medical treatment for his injuries, his mother brought him to the Town's police headquarters where they

---

4. In or about 1995 or 1996, the board of education met to consider whether Dapolito should be granted tenure as a District physical education teacher. (Am.Complt.¶ 14.) Lawrence Aaronstein, the principal of the School at the time, was strongly opposed to granting Dapolito tenure because of his physically assaultive behavior towards male students and sexually inappropriate behavior towards female students. (*Id.* ¶ 15.) Two board members agreed with Aaronstein, three others, however, agreed with Maurer, then-superintendent, who felt that Dapolito should be given tenure because he was "young" and should be given the opportunity to "outgrow" his inappropriate behaviors. (*Id.* ¶ 16.) Ultimately, the board voted 3–1 to grant Dapolito tenure, with one of the members who previously had expressed her opposition not present for the vote. (*Id.* ¶ 17.)

reported Dapolito's conduct to Astorita. (*Id.* ¶ 33.) Astorita, who claimed to be outraged "as a father" at Dapolito's conduct, advocated his arrest. (*Id.*) Two days thereafter, Brian signed a criminal complaint against Dapolito charging him with assault in the third degree, a class A misdemeanor. (*Id.*)

The District, however, took no disciplinary or remedial action against Dapolito, although it did transfer him to the District's grammar school. (*Id.* ¶¶ 34, 47.) Rather, plaintiff claims that Yazurlo and Siragusa, motivated by the criminal accusations and with the "knowledge and condonation" of school board members Reich, Buonocore, Raho, Gallo and Coleman, entered into an agreement or plan to cover-up Dapolito's actions. (*Id.* ¶ 35.) Part of this plan required disciplinary action to be taken against Brian, but not against Dapolito. (*Id.*) Thus, Siragusa, with the agreement of Yazurlo and the informal concurrence of the board of education, suspended Brian from school effective immediately for five days for "insubordination and endangering the health and safety of others." (*Id.* ¶ 36.) Thereafter, on April 28, 2003, Yazurlo advised Brian's parents via letter that a superintendent's hearing would be held on this charge pursuant to N.Y. EDUC. LAW § 3214. (*Id.* ¶ 37.)

Prior to the superintendent's hearing, Yazurlo and Siragusa, acting in concert with Dapolito, published or encouraged the publication of false allegations about Brian. (*Id.* ¶ 38.) These allegations included statements to the effect that, prior to the incident with Dapolito, Brian had threatened to rape Dapolito's daughter and wife. (*Id.*) Moreover, Yazurlo and Siragusa published or encouraged the publication of allegations stating that Brian had threatened to murder Brian's girlfriend and her younger sibling approximately two weeks prior to the April 24 incident with Dapoli-

to. (*Id.* ¶ 39.) The girlfriend, however, previously had admitted to Siragusa that she and two of her friends deliberately fabricated the death threat allegations. (*Id.*) Neither Yazurlo nor Siragusa disclosed publicly that any of these allegations were false, even though they knew that the media's republication of them would cause Brian emotional pain and suffering. (*Id.* ¶¶ 38–39.)

Thereafter, the superintendent's hearing was conducted by Siragusa and Yazurlo on April 30, 2003 without Brian present. (*Id.* ¶ 40.) No evidence was received during the hearing. (*Id.*) At the conclusion of the hearing, Yazurlo told plaintiff that Brian would have to be home-schooled for the remainder of the school year because of the aforementioned recanted threats and the April 24 incident with Dapolito. (*Id.*) A letter informing Brian and his parents of this decision followed on May 8, 2003. (*Id.* ¶ 48.)

In the period between April 24, 2003 and May 1, 2003, Astorita and Speidell communicated with Yazurlo and Siragusa and agreed to participate in the District's cover-up by engaging in deliberate inaction. (*Id.* ¶ 41.) To that end, Astorita and Speidell agreed to use their authority as police officers to prohibit the arrest of Dapolito on Brian's criminal complaint and to dissuade Brian and his parents from pursuing that arrest. (*Id.* ¶ 42.) Indeed, they met with Brian and his parents and warned them not to pursue the assault charge because the news media would publicize the event, causing Concordia College to rescind its offer of an athletic scholarship and ruin Brian's prospects for a professional baseball career. (*Id.* ¶ 43.) Speidell advised plaintiff that he agreed "100%" with Astorita's warning and advice. (*Id.*) Brian insisted, however, that the police arrest Dapolito because Dapolito posed an imminent threat to the health and safety of

other students. (*Id.* ¶ 44.) Astorita, with the approval and concurrence of Speidell, advised Brian that he alone had the authority to determine who would be prosecuted in the case, and that if Brian did not agree to a reduced violation-level charge against Dapolito, Astorita would accept a cross-complaint of harassment from Dapolito against Brian. (*Id.* ¶ 45.) To this end, Astorita wrote out the charge about which he had threatened Brian and gave the paper to plaintiff. (*Id.*) Brian and his parents did not yield to this attempted coercion, but Astorita and Speidell still declined to arrest Dapolito. (*Id.* ¶ 46.)

On May 8, 2003, Yazurlo sent a letter to Brian and his parents sustaining the charges heard at the April 30 superintendent's hearing. (*Id.* ¶ 48.) Yazurlo suspended Brian for the remainder of the school year, subject to home schooling. (*Id.*) As a result of the conduct of the board of education, Astorita, Speidell, Yazurlo and Siragusa, Brian was so panicked and distraught that he committed suicide on that same day by jumping in front of a passenger train at the Tuckahoe train station. (*Id.* ¶ 49.)

After Brian's death, on May 16, 2003, Yazurlo expressed his feigned sorrow and advised Brian's parents that "an allegation of child abuse in the educational setting on April 24, 2003" had been made and required investigation. (*Id.* ¶ 50.) Speidell and Astorita then falsely advised plaintiff that the arrest or prosecution of Dapolito was legally impossible because Brian's testimony was no longer available. (*Id.* ¶ 52.)

After the filing of this action, and the resulting media publicity, Yazurlo, Dapolito, Siragusa, Speidell and Astorita met at Yazurlo's office on September 4, 2003. (*Id.* ¶ 53.) At this meeting, these defendants agreed to engage in conduct creating the appearance that the District was taking appropriate remedial action with re-

spect to Dapolito. (*Id.* ¶ 54.) They agreed that Dapolito would remove his personal belongings from the grammar and high schools to give the impression that he was under disciplinary suspension. (*Id.*) It was further agreed that Speidell and Astorita would not permit the arrest of Dapolito, a result that they could effectuate because of the "hands-off" attitude of the Westchester County District Attorney's office. (*Id.* ¶ 55.)

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hertz Corp.,* 1 F.3d at 125; *In re AES Corp.,* 825 F.Supp. at 583. On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See*

*Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

## II. *Selective Prosecution Claims Against School Defendants*

School defendants move to dismiss the second count of the Amended Complaint alleging that they violated Brian's Fourteenth Amendment rights by engaging in an impermissible selective prosecution by taking disciplinary action against Brian alone as a result of the incident with Dapolito. (School Defs. Mem. Supp. Mot. Dismiss at 2, discussing Am. Complt. ¶¶ 59–60.)

██ In order to establish a violation of equal protection based upon selective enforcement, a plaintiff must show that: (1) compared with others similarly situated, he was selectively treated; and (2) such selective treatment was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LaTrieste Restaurant & Cabaret v. Port Chester,* 40 F.3d 587, 590 (2d Cir.1994). The parties do not dispute that the facts alleged in the Amended Complaint satisfy the second requirement; accordingly, we turn to the first requirement of the selective prosecution analysis.

██ To be "similarly situated," the persons with whom plaintiff compares Brian must be " 'similarly situated in all material aspects.' " *Richardson v. Newburgh Enlarged City Sch. Dist.,* 984 F.Supp. 735, 746 (S.D.N.Y.1997) (Conner, J.) (quoting *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997)). " '[E]xact correlation, [however], is neither likely nor necessary,' the test is whether a prudent person would think them roughly equivalent." *DePace v. Flaherty,* 183 F.Supp.2d 633, 640 (S.D.N.Y.2002) (quoting *Penlyn Dev. Corp. v. Inc. Vill. of Lloyd Harbor,* 51

F.Supp.2d 255, 264 (E.D.N.Y.1999)). As the First Circuit has stated:

> Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

*Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989).

School defendants contend that plaintiff fails to state a claim because the Amended Complaint does not allege that Brian was treated differently from similarly situated individuals either generally or in this specific case because Dapolito and Brian, as teacher and student, were not similarly situated. (School Defs. Mem. Supp. Mot. Dismiss at 2.) Plaintiff claims in response that Dapolito and Brian were similarly situated because they were subject to the same standards of conduct and had engaged in similar behavior. (Pl. Mem. Opp. Mot. Dismiss at 10, 13.)

We conclude that the second count of the Amended Complaint fails to state a claim for which relief can be granted because Brian and Dapolito were not similarly situated in all material aspects. Indeed, in the language of *Dartmouth Review,* Brian and Dapolito were an apple and an orange because one was a student and one was a teacher. In *Dartmouth Review,* a case alleging racial discrimination by a college in its treatment of conservative white student journalists, the First Circuit affirmed the district court's holding on a motion to dismiss that "a tenured faculty member and a student are not similarly situated simply because they both were involved in the same incident." 889 F.2d at 20 (internal quotation marks omitted).

One incident discussed in *Dartmouth Review* occurred when the students, who publicly had been critical of an African–American music professor, approached the professor after a class for a journal interview. *Id.* at 15. The professor became violent, screamed profanities, broke the students' camera and poked his fingers into the eyes of one of the plaintiffs. *Id.* The professor and the student plaintiffs then filed campus disciplinary charges against one another, which led to the professor's acquittal and the students' suspensions from the college. *Id.* The court concluded that there was no discrimination because "the parties cannot fairly be equated"; accordingly, the college administration's "more solicitous[ ]" treatment of an African–American professor after an altercation with the student plaintiffs that had led to their disciplinary suspension did not support the plaintiffs' discrimination claim. *Id.* at 20.

Plaintiff's reliance on Judge Kaplan's opinion in *DePace* is misplaced. (Pl. Mem. Opp. Mot. Dismiss at 10–12.) In that case, the principal of an elementary school brought an action claiming, inter alia, that his school district employer violated his Fourteenth Amendment rights by suspending him during the investigation of sexual harassment allegations against him, while neither charging nor suspending a non-tenured gym teacher accused of sexu-

ally harassing a female student at the same time. 183 F.Supp.2d at 636. In denying the motion to dismiss, Judge Kaplan rejected the school district's claim that the principal and the gym teacher were not similarly situated because of the difference in the disciplinary procedures applicable to each.[5] *Id.* at 640. The court concluded that under the facts alleged in the complaint, a jury would be entitled to find that they were similarly situated because they were subject to the *same* workplace standards of conduct that prohibited sexual harassment by district *employees*; the procedural differences were immaterial. *Id.*

Thus, although both Brian and Dapolito both were subject to substantive conduct rules prohibiting assaultive behavior (Pl. Mem. Opp. Mot. Dismiss at 10–11), they nevertheless were not similarly situated. Indeed, their situations differ fundamentally; as demonstrated by *Dartmouth Review*, there is no status distinction more intuitive than that between student and teacher. Accordingly, *DePace* is inapposite because that case involved a comparison between two district *employees*, namely, a principal and a non-tenured teacher.[6] The present case is far more analogous to *Dartmouth Review*, which involved proceedings stemming from an altercation between a student and a professor. Thus, we dismiss the second count of the Amend-

5. Judge Kaplan recognized that in the employment context, determination of whether a plaintiff is similarly situated with others in "all material aspects" "varies somewhat from case to case and ... must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir.2000). Indeed, in that context, the focus is on the substantive standard of conduct, not on differences in the applicable disciplinary procedure. *DePace,* 183 F.Supp.2d at 640.

6. Accordingly, Judge Kaplan's reliance on the proposition that "[w]hether two people are situated similarly ordinarily is a question of fact for the jury" was appropriate in *DePace,* 183 F.Supp.2d at 640, but is not determinative here because the difference between a teacher and a student in the educational context is so marked that "no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. Of Mineola,* 273 F.3d 494, 499 n. 2 (2d Cir.2001).

ed Complaint because it fails to state a claim of selective prosecution for which relief can be granted, but grant plaintiff leave to replead by filing a Second Amended Complaint within thirty days of the issuance of this Opinion and Order.

### III. *First Amendment Retaliation Claims Against Police and School Defendants*

Police and school defendants contend that plaintiff's First Amendment retaliation claims against them should be dismissed because: (1) the Amended Complaint fails to allege a claim against Speidell and the Town; (2) plaintiff lacks standing to bring this action because Brian suffered neither the invasion of a legally protected interest nor a concrete injury; (3) the Amended Complaint does not adequately allege a claim of conspiracy against them; and (4) it is barred by the doctrine of qualified immunity. (Police Defs. Mem. Supp. Mot. Dismiss at 6, 8–9, 16, 18.)

### A. *The Sufficiency of the Allegations Against Defendants Speidell and the Town*

■ Police defendants claim that plaintiff fails to allege a claim against Speidell and the Town in the Amended Complaint because, although they are named in the main caption and discussed in the fact section of the pleading, no cause of action is alleged against either of them because they are not mentioned in the third cause of action. (*Id.* at 6.) Plaintiff claims in response that the omission is an obvious clerical error that should not lead to dismissal in light of the remainder of the pleading, which discusses them in detail in the "parties" section, pleads specific allegations of wrongful conduct by Speidell and discusses the liability of the Town for the actions of Astorita and Speidell. (Pl. Mem. Opp. Mot. Dismiss at 27–28.)

"The courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y. 1981); *accord Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir.1974); *"Child" v. Beame,* 417 F.Supp. 1023, 1025 (S.D.N.Y. 1976).

We conclude that the Amended Complaint adequately alleges a claim against defendants Speidell and the Town. Plaintiff argues correctly that the facts section alleges in detail Speidell's participation in the events giving rise to plaintiff's claim and the Town's liability for Speidell's actions as the final policy-maker. (Pl. Mem. Opp. Mot. Dismiss at 27–28, discussing Am. Complt. ¶¶ 11, 13, 41–43, 45–46, 49, 52, 55.) This renders it distinct from the defective pleadings discussed in the cases cited by defendants (Police Defs. Mem. Supp. Mot. Dismiss at 6), which suffered from a complete lack of allegations against the moving defendants. *See "Child,"* 417 F.Supp. at 1025 ("The amended complaint contains no specific allegations of any direct contacts between the movants and the plaintiffs."); *Jones v. City of Syracuse,* No. 91 Civ. 1220, 1996 WL 481555, at *8 (N.D.N.Y. Aug.13, 1996) ("To allege such a conspiracy the plaintiff 'must set forth facts showing some intentional and purposeful deprivation of constitutional rights.'"); *compare Potter,* 497 F.2d at 1207 ("Conspicuous by its absence from the complaint is any allegation of any act on the part of the defendant toward the plaintiff."), *with Lewis v. Cook County Dep't of Corr.,* 28 F.Supp.2d 1073, 1079 (N.D.Ill.1998) (concluding that the plaintiff

stated individual capacity claims against correction officers because he "made allegations about all the defendants and did not just include their names in the caption, [therefore,] the present case is not analogous to *Potter* ").

Furthermore, we note that police defendants include Speidell and the Town in their memorandum's substantive arguments, thereby mitigating any prejudice that might have otherwise resulted from the omission in the Amended Complaint.[7] We therefore deny their motion to dismiss the claims against Speidell and the Town as a result of the clerical error of plaintiff's counsel, which may be corrected by an amendment of the Amended Complaint within thirty days of the issuance of this Opinion and Order.

## B. *Standing*

■ Police defendants further contend that plaintiff lacks standing to sue because: (1) there was no invasion of Brian's legally protected interest in the exercise of his First Amendment rights either of speech or to petition the government for the redress of grievances; and (2) the Amended Complaint fails to allege that Brian suffered a concrete injury as a result of defendants' actions or inactions. (Police Defs. Mem. Supp. Mot. Dismiss at 8–9, 14, 16.) Police defendants' standing arguments present a jurisdictional question. *See, e.g., Vt. Agency of Natural Res. v.*

*United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

In order to have standing, a plaintiff must: (1) have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted); (2) show that the injury is caused by the challenged activity; and (3) show that the injury is apt to be redressed by a remedy the court is prepared to give.

*Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir.1999). "When standing is challenged on the basis of the pleadings, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.' " *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir.1998) (quoting *Warth*, 422 U.S. at 498–99, 95 S.Ct. 2197). Indeed, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–89, 110 S.Ct.

---

7. In their Reply Memorandum, police defendants contend for the first time that plaintiff's action against the Town must be dismissed under the rule of *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) because the Amended Complaint does not allege that any Town policy or custom deprived Brian of his rights or that the "challenged action[s] [were] directed by an official with 'final policymaking authority.' " *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir.2003) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, 106

S.Ct. 1292, 89 L.Ed.2d 452 (1986)). (Police Defs. Reply Mem. Supp. Mot. Dismiss at 6–7.) We do not reach these contentions because it is well settled that arguments may not be raised for the first time in a reply brief as that tactic denies the plaintiff the opportunity to respond. *See, e.g., United States v. Yousef*, 327 F.3d 56, 115, 171 (2d Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 353, 157 L.Ed.2d 241 (2003); *Landau v. New Horizon Partners, Inc.*, No. 02 Civ. 6802, 2003 WL 22097989, at *10 (S.D.N.Y. Sept.8, 2003).

3177, 111 L.Ed.2d 695 (1990)). The Supreme Court has stated further:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Lujan*, 504 U.S. at 561–62, 112 S.Ct. 2130.

We conclude that plaintiff has standing to bring this action. We note that plaintiff's claims rest not on the failure to prosecute Dapolito, a matter in which Brian has no legally protected interest, *see, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), but rather Brian's First Amendment right to seek without retaliation the redress of grievances on a matter of public concern, namely the actions of an allegedly abusive and assaultive public school teacher. (Pl. Mem. Opp. Mot. Dismiss at 17–19; Am. Complt. ¶¶ 61–62.). Moreover, the Amended Complaint alleged that "[a]s a result of defendants' conduct and/or retaliatory conduct Brian suffered [inter alia] ... public humiliation, public shame, public degradation, anxiety, public embarrassment, ... emotional upset, loss of self-esteem, and was otherwise rendered sick and sore." (Am.Complt.¶ 56.) These are injuries sufficiently concrete to satisfy the Article III standing requirement. *See, e.g., Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 184–85 (2d Cir.2001) (concluding that emotional trauma "is sufficient to establish standing under Article III" because the plaintiff "has alleged an actual injury to herself: the emotional trauma she suffered as a result of an allegedly hostile work environment."). We now turn to the legal sufficiency of plaintiff's First Amendment retaliation claim.

**C.  *The Adequacy of the Conspiracy Allegations in the Amended Complaint***

Police defendants claim that the allegations of conspiracy in the Amended Complaint are overbroad, vague and inadequate. (Police Defs. Mem. Supp. Mot. Dismiss at 6–8.) Plaintiff claims that the Amended Complaint has alleged facts sufficiently specific to sustain a claim of conspiracy. (Pl. Mem. Opp. Mot. Dismiss at 21–22.)

To survive a motion to dismiss, a § 1983 conspiracy claim must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999); *accord Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir.2002). "In addition, 'complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). The requisite specificity requires that the plaintiff "make an effort to provide some 'details of time and place and the alleged effect of the conspiracy.'" *Dwares*, 985 F.2d at 100 (quoting 2A Moore's Federal Practice ¶ 8.17[6], at 8–

109 to 8–110 (2d ed.1992)).[8]

■ We conclude that the Amended Complaint more than satisfies this time, place and effect pleading standard. Distilled from the detailed averments contained therein, it states that the agreement occurred between April 24, 2003 and May 1, 2003, the acts by the various parties in furtherance of the conspiracy such as police defendants' plan to abuse their authority while school defendants pursued disciplinary action against Brian, and the ultimate effect of covering-up Dapolito's assaultive behavior. (Am.Complt.¶¶ 41–48.) The Amended Complaint also links these actions to Brian's ultimate suicide. (*Id.* ¶ 49.) We, therefore, deny police defendants' motion to dismiss on the asserted ground of the Amended Complaint's failure to adequately allege a conspiracy.[9]

### D. *The Legal Sufficiency of Claims of Retaliation Against Police Defendants*

Police defendants contend that Brian's constitutional rights were not violated because: (1) his filing of a criminal complaint against Dapolito did not constitute a protected activity under First Amendment retaliation doctrine; and (2) he did not have a legally protected interest in the arrest and prosecution of Dapolito under the line of cases following *Linda R.S.*, 410 U.S. at 619, 93 S.Ct. 1146, which held that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." (Police Defs. Mem. Supp. Mot. Dismiss at 11, 13–14.) Plaintiff contends in response that Brian's action of filing a criminal complaint with the police constituted the exercise of his First Amendment right to seek the redress of grievances on a matter of public concern, namely the presence of an abusive and assaultive teacher. (Pl. Mem. Opp. Mot. Dismiss at 17–19.)

■ To establish a First Amendment retaliation claim, a "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Cur-*

---

**8.** As we recognized in our recent Opinion and Order in *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 513 n. 18 (S.D.N.Y.2003) (Conner, J.), a recent Southern District decision by Judge Koeltl questioned the continuing validity of the Second Circuit's *Ciambriello/Pangburn* standard in light of the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), wherein the Supreme Court held that the Rule 8(a) simplified notice pleading standard applies, with limited exceptions, to all actions. *See Bullard v. City of New York,* 240 F.Supp.2d 292, 301–02 (S.D.N.Y.2003). As in *Bullard,* however, the present case does not require the resolution of the apparent tension between the pleading standards set forth in *Ciambriello/Pangburn* and *Swierkiewicz* because the allegations set forth in the Amended Complaint satisfy even the more stringent pleading standard. *See Bullard,* 240 F.Supp.2d at 302.

**9.** Police defendants also claim that actions taken in furtherance of the conspiracy after Brian's death are not actionable. (Police Defs. Mem. Supp. Mot. Dismiss at 8.) They rely on the well established proposition stated in *Ford v. Moore,* 237 F.3d 156, 165 (2d Cir.2001), that because a dead person has no constitutional rights, post-death cover-ups are not actionable conspiracies to violate those rights. We disagree because in the present case, the alleged conspiracy to violate Brian's rights began prior to his death and is, therefore, actionable. *See Henderson v. Gomez,* No. C–93–0888 MHP, 1993 WL 299363, at *5 (N.D.Cal. July 23, 1993) ("However, evidence of a post-mortem cover-up may be used to support a finding of a conspiracy to deprive Mr. Henderson of his civil rights, so long as that conspiracy began at some time before his death and the post-mortem actions are sufficiently linked to pre-death conspiratorial actions.").

*ley v. Vill. Of Suffern,* 268 F.3d 65, 73 (2d Cir.2001) (citing *Connell v. Signoracci,* 153 F.3d 74, 79 (2d Cir.1998)).[10] Police defendants claim that the allegations in the Amended Complaint fail to satisfy any of the three requirements of this test. We conclude that the allegations in the Amended Complaint state a sufficient First Amendment retaliation claim.

■ We first address whether Brian's actions in swearing out a criminal complaint against Dapolito and seeking his arrest constituted conduct protected by the First Amendment. "The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Gagliardi,* 18 F.3d at 194. Indeed, "[t]he Supreme Court has described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988) (quoting *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)). As recently noted by the United States District Court for the Eastern District of Texas, it is axiomatic "that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right" to petition government for the redress of grievances. *Lott v. Andrews Ctr.,* 259 F.Supp.2d 564, 568 (E.D.Tex.2003) (stating that there is "no doubt" as to the existence of this right). This right applies equally to the victims of

crimes. *Id.* at 570–71. Moreover, Brian's criminal complaint about Dapolito raised a matter of significant public concern, namely, the abusive actions of a teacher responsible for the care and guidance of public school students. *Cf. Rao v. New York City Health and Hosps. Corp.,* 905 F.Supp. 1236, 1243 (S.D.N.Y.1995) (noting in public employee termination case that "[a]n employee seeking to bring to light actual or potential wrongdoing or a breach of public trust by public employees or agencies is addressing a matter of public concern"). Accordingly, we conclude that Brian's actions in seeking the criminal prosecution of Dapolito were protected by the First Amendment.

We next address whether the second element, namely, whether "defendants' actions were motivated or substantially caused by his exercise of that [First Amendment] right," has been satisfied. "The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint." *Gagliardi,* 18 F.3d at 195. Indeed, "[w]hile a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Id.* Nevertheless, "[t]o survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'"

---

**10.** In the content of their memoranda of law, the parties appear to dispute whether "chilling" is an element in a retaliation claim under Second Circuit case law. (Police Defs. Mem. Supp. Mot. Dismiss at 10–11; Pl. Mem. Opp. Mot. Dismiss at 16.) Indeed, *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir.1994), cited by both parties for the elements of retaliation, does not contain an element of chilling. More recent Second Circuit retaliation cases do, however, expressly include that third element. *See, e.g., Curley,* 268 F.3d at 73; *Kerman v. City of New York,* 261 F.3d 229, 241–42 (2d Cir.2001); *Connell,* 153 F.3d at 79; *New England Health Care, Employees Union v. Rowland,* 221 F.Supp.2d 297, 343 (D.Conn.2002). Our analysis, therefore, incorporates that chilling element as well. For a discussion of different First Amendment retaliation formulations, see *infra* note 11.

*Friedl v. City of New York,* 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)).

Our review of the Amended Complaint indicates that plaintiff has sufficiently alleged the "requisite nexus," *Gagliardi,* 18 F.3d at 195, between Brian's exercise of his First Amendment rights and the alleged retaliatory actions of police defendants. At their first meeting on April 24, 2003, Astorita initially was supportive of Brian's desire to have Dapolito arrested. (Am.Complt.¶ 33.) The Amended Complaint alleges, however, that police defendants met with Yazurlo and Siragusa sometime between April 24 and May 1, 2003, and agreed to participate in the District's cover-up of the incident. (*Id.* ¶ 41.) Indeed, when Brian filed the criminal complaint with the police on April 26, 2003, two days after his altercation with Dapolito, the attitude of Astorita toward Dapolito's arrest had changed; he strongly discouraged Brian from filing the charges by informing him of the potential harm to his professional baseball prospects. (*Id.* ¶¶ 42–43.) The fact that Astorita told Brian that he would accept harassment charges against him by Dapolito unless Brian agreed to the filing of a reduced charge supports an even stronger inference of coercion. (*Id.* ¶ 45.) That Brian was suspended shortly thereafter by school defendants, and police defendants falsely informed plaintiff that the prosecution of Dapolito was legally impossible after Brian's death, further lend support to an inference of retaliation motivated by

the filing of the criminal complaint. Accordingly, we conclude that plaintiff has alleged sufficient facts to satisfy the second element of the retaliation claim.

With respect to the third element, the "plaintiff must show ... that his First Amendment rights were 'actually chilled.'" *Curley,* .268 F.3d at 73 (quoting *Davis v. Vill. Park II Realty Co.,* 578 F.2d 461, 464 (2d Cir.1978) and *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)). "'Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Id.* Indeed, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Id.* (concluding that the plaintiff did not prove "chill" when, although "he was arrested in retaliation for his comments made during the 1993 mayoral campaign, he continued his 1994 campaign for village trustee even after the arrest and ran again for village public office in 1995"); *see also Kerman,* 261 F.3d at 242 (police officers' transportation of plaintiff to psychiatric ward in retaliation for his derogatory remarks and threats to sue them "has an obvious chilling effect"); *Persaud v. McSorley,* 275 F.Supp.2d 490, 495 (S.D.N.Y.2003) (Conner, J.) (concluding that there was no chill when heated conversation with police officer occurred both before and after police officer's issuance of two traffic tickets).[11]

---

**11.** We note that the Fourth and Sixth Circuits follow formulations for First Amendment retaliation claims that likely would be even more hospitable to plaintiff than the Second Circuit's stricter "actual chill" requirement as set forth in *Connell,* 153 F.3d at 79, and *Curley,* 268 F.3d at 73. In the Fourth Circuit, the third element requires "the plaintiff [to] demonstrate that the defendant's alleged retaliatory action *adversely affected* the plain-

tiff's constitutionally protected speech." *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000) (emphasis added). In the Sixth Circuit, a retaliation plaintiff must show that "the defendant's adverse action caused the plaintiff to suffer an injury that would *likely chill a person of ordinary firmness* from continuing to engage in that [constitutionally protected] activity." *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998) (emphasis added).

Police defendants contend that Brian's protected speech and conduct was not abridged because he was able to swear out the criminal complaint against Dapolito without restriction, which exhausted his rights in the matter because it is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R.S.*, 410 U.S. at 619, 93 S.Ct. 1146. (Police Defs. Mem. Supp. Mot. Dismiss at 10–11, 14.) We believe, however, that the requirement of a chilling effect is inappropriate in the unusual circumstances of the present case, where the exercise of First Amendment rights allegedly caused the person exercising them to be subjected to severe punishment, specifically, suspension for the remainder of the student's senior year, with likely resulting loss of a college scholarship and reduced opportunity for a professional athletic career. Such summary punishment for the exercise of constitutional rights is clearly a more serious infringement of those rights than a mere chilling of their continued exercise. It is comparable to the involuntary psychiatric hospitalization of the plaintiff in *Kerman* in retaliation for derogatory remarks and threats to sue the police. 261 F.3d at 242; *see also Persaud,* 275 F.Supp.2d at 495 (stating in dicta that the plaintiff's First Amendment retaliation claim against a police officer "may have survived if it could have been shown that she suffered a *significant harm,* that is, if [she] were issued the traffic ticket without justification and in retaliation by [defendant police officer] for [plaintiff's husband's] persistent and forceful criticism of his handling of the accident investigation"). Moreover, we find persuasive *Brown v. W. Conn. State Univ.,* 204 F.Supp.2d 355, 364–65 (D.Conn.

2002), wherein the court concluded that the plaintiff, a student, had stated valid First Amendment retaliation claims when he alleged that the president and trustees of a state university collectively orchestrated his expulsion in retaliation for public criticisms about the school's administration. Indeed, the fact that Brian and his parents resisted the coercion attempts by the police and continued to insist that Dapolito be charged with a misdemeanor, rather than the violation urged by police defendants (Am.Complt.¶¶ 33, 42–46) should not constitute a free pass for alleged police conduct that was constitutionally odious.[12] Accordingly, we conclude that the allegations in the Amended Complaint state a legally sufficient First Amendment retaliation claim.

### E. *Whether Police Defendants Are Entitled to Qualified Immunity*

■ Police defendants next claim that the claims alleged by plaintiff are barred by the doctrine of qualified immunity. (Police Defs. Mem. Supp. Mot. Dismiss at 18–19.) "The qualified immunity doctrine shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *X-Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65 (2d Cir.1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or

---

**12.** To illustrate by extreme example, if a police officer to whom a criminal complaint is made beat the complainant on the head with a nightstick to punish him for making the complaint, surely the law would not deny him a remedy because he continues to complain thereafter.

undergoing a trial." *Id.* With respect to the substance of the doctrine:

> [A] government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law, ...; (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, ...; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken."

*X–Men Sec.,* 196 F.3d at 65–66 (citations omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third." *Id.* at 66.

We already have concluded that the alleged conduct of Astorita and Speidell was prohibited by federal law. With respect to the second element, police defendants claim, however, that it was not clear at the time of the official acts in question that Brian's conduct was protected by the Constitution or a federal statute, particularly in light of the *Linda R.S.* line of cases emphasizing that a private citizen lacks a judicially cognizable interest in the arrest and prosecution of another person. (Police Defs. Mem. Supp. Mot. Dismiss at 20–22.) The Second Circuit has stated that:

> We have held that in determining whether a right was clearly established at the time the defendants acted, a court should consider: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the appli-cable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful."

*Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quoting *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993)).

We conclude that the First Amendment right alleged to have been violated by police defendants was clearly established at the time of the incident. Thirty-six years ago, the "Supreme Court ... described the right to petition government for redress of grievances as 'among the most precious of the liberties safeguarded by the Bill of Rights.'" *Franco,* 854 F.2d at 589 (quoting *United Mine Workers,* 389 U.S. at 222, 88 S.Ct. 353). As stated before, a Texas federal court considered it axiomatic "that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right" to petition government for the redress of grievances. *Lott,* 259 F.Supp.2d at 568. Finally, the Supreme Court has long recognized the citizens' right to exercise constitutional, and specifically First Amendment, freedoms without retaliation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Indeed, the basic First Amendment retaliation elements utilized in this Opinion and Order first made their appearance in a Second Circuit decision over fifteen years ago. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987).

Lastly, we conclude that police defendants' alleged actions were not objectively legally reasonable in light of the constitutional rules established at the time of the incident in question. The Amended Complaint alleges a retaliation breathtaking in

its brazenness and gravity. Any reasonable police official would know that the acts comprising that retaliation were unlawful. Accordingly, we deny police defendants' motion to dismiss the third count of the Amended Complaint on qualified immunity grounds.

## CONCLUSION

For all of the foregoing reasons, school defendants' motion to dismiss the second count of the Amended Complaint is granted. Defendants' motion to dismiss the third count of the Amended Complaint is denied. Plaintiff is granted leave to file a Second Amended Complaint within thirty days of the issuance of this Opinion and Order.

SO ORDERED.